Nannie M. Wright et al., Appellants, *v.* Rudolph Bircher, Respondent.

February 19, 1878.

1. While a mortgage of property not in existence, or not owned by the mortgageor at the date of the execution of the mortgage, is void in law, yet where the contract relates to particular property, reasonably certain to come into existence, and which is to be connected with or is necessary to the use of something in existence, in which the mortgageor has an actual interest, so as to constitute a tangible, existing basis for the contract, such a contract may be upheld in equity.

2. B. leased a hotel building to M., reserving in the lease a lien on the furniture to be put in the building; after the furniture had been put in, W., who had notice of the terms of the lease, lent money to M. and took a mortgage on the furniture. *Held,* that the lien reserved in the lease will be upheld in equity, and has priority over the subsequent mortgage. The lessees, as to

the furniture in question, became trustees for the lessor, and the lessor's claim was a charge *in rem*, by virtue of the contract, against the lessees and all who claimed under them with notice.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

FRANK J. BOWMAN, for appellants : Property not owned and not in existence at the time of the making of the mortgage cannot be conveyed thereby, except in cases where it is but an incidental and necessary addition to property in existence at the time of the execution of the mortgage. — *Dunn* v. *Thornton*, 1 C. B. 379 ; *Barnard* v. *Eaton*, 2 Cush. 294 ; *Pettis* v. *Kellogg*, 7 Cush. 471 ; *Winslow* v. *Insurance Co.*, 4 Metc. 306 ; *Otis* v. *Sill*, 8 Barb. 102 ; *Goodenow* v. *Dunn*, 21 Metc. 96.

M. L. GRAY and J. M. HOLMES, for appellants : A mortgage of property to be acquired *in futuro* is void at law. — *McCaffrey* v. *Woden*, 62 Barb. 316 ; *Butterfield* v. *Baker*, 5 Pick. 522 ; *Munsell* v. *Carew*, 2 Cush. 50 ; *Head* v. *Goodwin*, 37 Me. 181 ; *Barnard* v. *Eaton*, 2 Cush. 294 ; *Codman* v. *Freeman*, 3 Cush. 306 ; *Otis* v. *Sill*, 8 Barb. 102 ; *Gardner* v. *McEwen*, 19 N. Y. 123 ; *Tapfield* v. *Hillman*, 46 Eng. Com. Law, 243 ; *Dunn* v. *Thornton*, 50 Eng. Com. Law, 379 ; *Gale* v. *Burnell*, 53 Eng. Com. Law, 850. It is equally void in equity as a conveyance. — *Moody* v. *Wright*, 13 Metc. 17 ; *Ross* v. *Wilson, Peter & Co.*, 7 Bush, 29 ; *Mogg* v. *Baker*, 3 Mee. & W. 195 ; *Gale* v. *Burnell*, 7 Ad. & E. 850 ; *Morrill* v. *Noyes*, 3 Am. Law Reg. (N. S.) 18 ; *Pennock* v. *Coe*, 23 How. 117 ; 2 Hill. on Mort., chap. 43, and cases cited. The lien reserved in the lease is only for rent in arrear ; and, as no rent was in arrear, the tenant had the *jus disponendi* when the mortgage was given, and the lien of the lessor is postponed to that of the mortgagee. — *Dalton* v. *Laudahn*, 27 Mich. 529.

CHARLES B. HOWRY and W. L. SCOTT, for respondent : The true character of the lien clause in the lease is that of

an equitable mortgage. — Hill. on Mort. 648 *et seq.; Lincoln* v. *Purcell*, 2 Head, 143 ; *Blackburn* v. *Tweedle*, 60 Mo. 505 ; *Flagg* v. *Mann*, 2 Sumn. 533 ; *Foster* v. *Reynolds*, 38 Mo. 553 ; *Bank* v. *French*, 3 Barb. Ch. 293 ; *Collins* v. *Carle*, 13 Ill. 254 ; *Johnson* v. *Huston*, 17 Mo. 58 ; *Shirras* v. *Craig*, 7 Cranch, 34 ; *Burgess* v. *Kattleman*, 41 Mo. 483. A mortgage of property not *in esse* at the date of the mortgage, but which, within the contemplation of the parties, is to be thereafter acquired, is valid in equity, and is operative against the mortgageor, and all persons purchasing from or claiming under him with notice. — *Mitchell* v. *Winslow*, 2 Story, 630 ; *Fletcher* v. *Morey*, 2 Story, 550 ; *Willink* v. *Morris Canal Co.*, 3 Green Ch. 377 ; *In re How*, 1 Paige, 129 ; *McComber* v. *Parker*, 14 Pick. 497 ; *Benjamin* v. *Railroad Co.*, 49 Barb. 441 ; *Sillers* v. *Lester*, 48 Miss. 613 ; *Smithhurst* v. *Edmonds*, 17 N. J. Eq. 408 ; *Pierce* v. *Railroad Co.*, 25 Wis. 551 ; *Pierce* v. *Emory*, 33 N. H. 484 ; *Seymour* v. *Railroad Co.*, 26 Barb. 286 ; *Arnoult* v. *Annis*, 16 La. An. 225 ; *Trust Co.* v. *Hendrickson*, 25 Barb. 484 ; *Pennock* v. *Coe*, 23 How. 17 ; *Phillips* v. *Winslow*, 18 B. Mon. 531 ; *Galveston R. Co.* v. *Howdry*, 11 Wall. 489 ; *United States* v. *Railroad Co.*, 12 Wall. 362 ; *Brett* v. *Carter*, 3 Cent. L. J. 286 ; *Morrill* v. *Noyes*, 3 Am. L. Reg. (N. S.) 18 ; *Langton* v. *Horten*, 1 Hare, 549 ; *Holroyd* v. *Marshall*, 9 Jur. (N. s.) 213 ; *Abbott* v. *Stratton*, 3 Jo. & Lat. 603 ; *Whitworth* v. *Gaugain*, 3 Hare, 416 ; *Douglass* v. *Russell*, 3 Jur. 512 ; 1 Myl. & K. 488.

BAKEWELL, J., delivered the opinion of the court.

On Feb. 10, 1873, the respondent, Bircher, was erecting a large building on the south-east corner of Sixth and Chestnut Streets, in the city of St. Louis. The building was intended for a hotel. At the date named, and before the building was entirely completed, Bircher entered into an agreement in writing with John W. and Walter A.

Malin in regard to these premises. This contract is under seal, and is executed in duplicate by both parties. By its provisions, Bircher leases the building to the Malins at an annual rent of $32,500, payable monthly. A blank was left for the day on which the term was to commence, with a proviso that it should be filled on the completion of the building. This blank was afterwards filled by inserting the words "first day of August, 1873;" and the lease, which had been acknowledged by both parties on the day of its date, was then recorded. The lease does not, in so many words, say that the building must be used for a hotel, but it is spoken of throughout as a hotel building, and it plainly appears from the lease, and is admitted, that it was to be used as a hotel. The lease contains covenants against the permission of nuisances, and against subletting portions of the hotel building for any purposes, and against subletting other parts for certain purposes named, and has this stipulation: "All the furniture, fixtures, and other improvements of the hotel shall be bound for the rent, and for the fulfilment of the other covenants contained in the contract on the part of the lessees." At the date of the lease, the building could not be used for any purpose. As it approached completion, the lessees began to make the necessary preparations for their hotel business. In July, they began to furnish the building; and on July 9, they had placed in the building all the furniture and fixtures in controversy in this case. About twelve months after the execution of this lease, the appellant Mrs. Wright, who is a daughter of John W. Malin, lent the sum of $25,000 to the Malins, taking their note for the amount, secured by deed of trust upon all the furniture and fixtures in the Laclede-Bircher Hotel. This deed was duly recorded. John W. Malin died soon after this transaction, leaving his widow and executrix a life-interest in his hotel property; and on May 26, 1875, the widow and son, who were carrying on the business, borrowed of Mrs. Wright $10,000

more, giving her a second deed of trust on the same property, which was duly recorded. At the time these deeds were given, the rent was not in arrear. The Laclede-Bircher Hotel was composed of the Bircher Hotel, the new building spoken of in the lease under consideration, and of another older building of about the same size. The deeds of trust of Mrs. Wright, therefore, covered not only the furniture spoken of in the lease, but also the furniture in the Laclede part of the building. Afterwards the rent fell in arrear, and on Dec. 11, 1876, respondent took possession of the hotel and its equipments. The trustee of Mrs. Wright demanded possession of the furniture, the notes secured by deeds being overdue. Respondent refused to surrender the furniture, and claims that he has a lien upon it for rent, by the terms of his lease. The rent due is about $15,000, and the sum due on the notes about $30,000. The case was submitted to the trial court on an agreed statement of facts, and the finding and judgment was for defendant. Plaintiffs appeal.

The question to be determined is, whether Bircher has a lien upon the furniture for his rent, under the clause in the lease above set out, and, if so, whether it takes precedence of the liens of Wright. It is admitted that Mrs. Wright, when she lent the money to her father, had not only constructive, but actual, notice of the provision in the lease that the furniture was liable for the rent. It is manifest that the intention of the Malins and Bircher was that the furniture of the hotel should be a security for the rent. If, then, the contract was effectual to carry out the design of the parties, and Bircher has a prior lien, Mrs. Wright cannot complain. She acted with her eyes open, with the fullest notice, and took every risk. She knew that her security was doubtful if the contract of her father and brother with Bircher was to be carried out according to the plain intention of the parties; and, if she looked to this security at all, she knew that Bircher claimed a lien, and on what

grounds; and, if the lien is valid, she took the risk of non-payment of the rent.

That a mortgage of property not in existence, or not owned by the mortgageor at the time of the execution of the conveyance, is absolutely void at law, is conceded. There is no question as to that; it has been so ruled in Missouri, and the rule is well established in England and America. But equity has in some cases sustained conveyances of property not owned by the person giving the lien at the date of the transaction, and not even in existence. The tests are thus stated in the well-considered case of *Morrill* v. *Noyes*, 3 Am. Law Reg. (N. s.) 18 (1863): The contract must relate to some particular property described therein, which, though not in existence, must be reasonably certain to come into existence, so that the minds of the parties may be in agreement as to what it is. The vendor or mortgageor must have present interest in or concerning the thing sold or mortgaged; and there must be something *in præsenti*, of which the thing *in futuro* is to be the product, or with which it is to be connected as necessary for its use, or as incident to it, constituting a tangible, existing basis for the contract. Where these circumstances concur, it seems to be now held in England, and has been held in some well-considered cases in this country, that the contract concerning a thing not *in esse*, and, *à fortiori*, as to a thing not yet owned by the person making the sale or giving a lien, may be upheld by a court of equity.

The facts in the case of *Holroyd* v. *Marshall*, which was decided in 1861, and is the leading English case upon the point that no existing property to be acquired at a future time is assignable in equity, were these: H. sold to T. all the machinery in T.'s mill. The deed, registered as a bill of sale, after reciting the purchase, witnessed that T. assigned to a trustee all the machinery specified in a schedule, on trust, if T. paid to H. £5,000 absolutely; but, in default of such payment, the trustee to sell, and ap-

ply the proceeds. The deed also provided that all the machinery which, during the continuance of the security, should be placed on the premises, in addition to or to replace the present machinery, should be subject to the same trusts. T. remained in possession, and from time to time sold part of the machinery and purchased new. The added and substituted machinery was seized on execution, at the suit of a judgment-creditor of T. It was held, that the added and substituted machinery became subject to the deed as soon as put on the premises ; that H. was equitable owner, and had priority; and that, though non-existing property to be acquired at a future time is not assignable at law, the rule is otherwise in equity. The case is reported in 10 H. L. Cas. 190. The case was three times argued. The decree of Vice-Chancellor Stuart sustained the deed. The decree was reversed by Lord Campbell, who shortly afterwards died. In the House of Lords the case was very carefully argued, and the decree of the lord chancellor was reversed and that of the vice-chancellor affirmed. The question certainly received there the most careful consideration, and may be considered as settled in England. The lord chancellor, in his opinion, refers to *Mogg* v. *Baker*, 3 Mee. & W. 198, which is cited as a leading case for the other view, and says that Baron Parke, in that case, seems to have given, not his own opinion, but what he understood would have been the decision of a court of equity upon the case : "He is represented as speaking upon the authority of one of the judges of the Court of Chancery. Any communication so made was, of course, extra-judicial, and there is much danger in making communications of such a nature the ground of judicial decision."

The question is again most thoroughly and carefully examined in the case of *Morrill* v. *Noyes*, cited above. Judge Davis, in his valuable opinion in that case, reviews the leading English and American authorities upon the question. That case is enriched, as reported in 3 Am. L. Reg. (N. s.)

30, by an interesting note from Judge Redfield, who cordially assents to the principles established, and intimates that the public interests and the necessities of business men require their universal acceptance in America.

There seems, indeed, no reason why equity should not uphold a contract of this sort which has been actually made, when it is certain that if one agrees to sell or to mortgage property which he does not then possess, a court of chancery will compel him to specific performance, if he has received the consideration and afterwards becomes possessed of property answering the description in the contract.

In *Mitchell* v. *Winslow*, 2 Story, 631, a mortgage on all tools and machinery in a cutler's shop, together with all that might be manufactured or purchased within four years, was held to be a good equitable lien, and protected as such under the Bankrupt Act; and in that case Judge Story says that, " wherever parties, by their contract, intend to create a positive lien or charge on real or personal property, whether then owned by the assignor or not, or whether *in esse* or not, a lien or charge in equity attaches upon the particular property as soon as the assignor or contractor acquires a title thereto." This was fifteen years before the elaborate discussion of the question in the English case and the case in Maine.

It is true that the American cases to which we are referred, as following *Holroyd* v. *Marshall* and *Morrill* v. *Noyes*, are railroad cases, as was that latter case itself; and the question is as to the rolling stock, etc., of the road. But we think that the principles of those cases fully apply to the case at bar.

We think the property here was sufficiently certain in character, and that there was a sufficient reasonable certainty that it would come into existence. The furniture of a large hotel in a large American city is a thing as definite as the rolling-stock of a railroad. All large hotels are furnished substantially in the same manner. The hotel must neces-

sarily be furnished, and could only be furnished in one way, consistently with doing a business to justify the rent of .$32,000 a year. The furniture was an incident of the hotel; and in the hotel the mortgageor had, at the time the lien was reserved, an actual present interest. There was, therefore, a tangible basis for the contract.

It is contended, however, that the lien is only for rent in arrear, and that, as there was no rent in arrear when the mortgages to Mrs. Wright were given, the lien did not attach, and must be postponed to hers. This view would, of course, make the clause under consideration absolutely worthless as any security to the lessor. We are referred to a case in Michigan. *Dalton* v. *Laudahn*, 27 Mich. 532. In that case, it is determined that, under a stipulation giving the lessor a lien on the furniture for his rent, and authorizing him to seize and sell the furniture in case of default, the right to take the furniture could be exercised only in case of default; and, therefore, that a taking on the day the rent was due could not be justified, as the tenant had the whole day in which to make payment. That was the point in the case. The court says that the stipulation in the lease was not a mortgage, and in support of that proposition refers to *Holmes* v. *Hall*, 8 Mich. 66. But the instrument construed in *Holmes* v. *Hall* contained no stipulation giving a lien in express terms, but merely provided that if the debt was not paid, on default the creditor might take possession of all the goods in the store of the debtor, and sell them. The truth is, that contracts undistinguishable in their terms have sometimes been construed as mortgages and sometimes as pledges, as would best effect the intentions of the parties and subserve the purposes of justice. Courts formerly leaned not to construe instruments to be mortgages, because it was held that in mortgages the title became absolute on condition broken. But no particular words are requisite to constitute a mortgage; and, if it is apparent that a mortgage was intended, the courts will so construe

the words. " I pledge and give a lien," were the words in *Langdon* v. *Buel*, 9 Wend. 80, and the writing was construed to be a mortgage. In Vermont, a writing to this effect, " Turned out and delivered to P. A. one white cow, which he may dispose of in fourteen days, to satisfy an execution," was held to be a mortgage, in the absence of all proof to explain it. *Atwater* v. *Mower*, 10 Vt. 75. In that case, the cow was left in possession of the mortgageor. It was held that it could not, therefore, be a pledge, and must be a mortgage. Any conveyance of property, intended by the parties making it, at the time they made it, to be a security, is a mortgage. Thomas on Mort. 11. If the instrument before us cannot be brought within the definition of a mortgage, and if it is not a pledge, as it certainly is not, it is, as we have seen, a lien. And though there was here neither mortgage nor pledge, yet equity regards the goods as hypothecated and pledged, as against the parties executing this instrument, and those claiming under them with notice. For, "the maxim is universal that wherever persons agree concerning a particular subject, that, in equity, as against the party himself and any claiming under him, voluntarily or with notice, raises a trust." *Per* Loughborough, *Leyard* v. *Hodges*, 1 Ves. jr. 478. And, as is said by Judge Story in *Fletcher* v. *Morey*, 2 Story, 565, " in equity, there is no difficulty in enforcing a lien, or any other equitable claim constituting a charge *in rem*, not only upon real estate, but also upon personal estate, whenever the lien or other claim is a matter of agreement, against the party himself and his personal representatives, and any persons claiming under him with notice." It is not contended that there was, in the present case, any legal mortgage or pledge. There could be nothing of the kind, for the law considers it impossible to pledge or mortgage what does not exist, or what one does not own at the time. *Nemo dat quod non habet.* But the claim is that the lessees, as to the furniture in question, became trustees for the lessor.

On the authority of the cases cited, and on the reasoning of those cases, we think that they should be so regarded, and that the lien of Bircher has priority over the subsequent, mortgages to Mrs. Wright.

The case of *Moody* v. *Wright*, 13 Metc. 17, is a very carefully considered case, and is a leading case against the view which we have adopted, and has been frequently followed. It was decided in 1847, before *Holroyd* v. *Marshall;* and the case of *Mogg* v. *Baker*, which was then followed in England, is greatly relied upon as influencing the decision. Why *Mogg* v. *Baker* is not to be regarded as authority, has been already seen. In *Jones* v. *Richardson*, 10 Metc. 489, the same court examined the question of the validity of a. mortgage upon after-acquired property, in a court of law,. and held it to be void ; but refers to *Fletcher* v.*Morey*, quoted above, to say that the question there was a very different one, since it was a case in equity, and many things are assignable in equity that are not so regarded in a court of law. And in a very recent case in Massachusetts (*Brett* v. *Carter*, 3 Cent. L. J. 286), before the United States District Court,. Judge Lovell concedes that the general rule in equity is,. that, after-acquired chattels may be mortgaged, and says : " Considering the decision of Judge Story in this circuit,. and the reasons given by the court of Massachusetts for not. following it, and the entire consistency of all the recent decisions with Judge Story's views, and the disappearance of Baron Parke's *dictum*, on which the decisions in Massachusetts were mainly rested, I am not prepared to say that, if the Supreme Judicial Court were now asked to review their decision in *Moody* v. *Wright*, it is at all certain they would not reverse it ; and, under the circumstances, I do not feel bound to hold that that case furnishes a settled rule of property. I rather incline to the belief that the law of Massachusetts, in equity, is, to-day, that a mortgage of after-acquired chattels is valid." The American cases in which it has been so held will be found cited in the opinion just

·cited, and in *Williams* v. *Briggs*, recently decided by the Supreme Court of Rhode Island, and reported in the Albany Law Journal. They show that the view which we adopt is that of the current of the later cases.

The precise point was not before the Supreme Court of Missouri in *Page* v. *Gardner*, 20 Mo. 507, but the doctrine of Judge Story in *Mitchell* v. *Winslow*, is there cited with approval, and there can be little doubt that it would have been followed, had it been necessary to the determination of the case then before the court.

No purpose can be served by any further discussion of the ·question in this opinion. All that can be said on the subject has been already said by judges of great learning, in cases ·that have been most carefully prepared by counsel, and ·opposite conclusions have undoubtedly been reached. We have given to the subject, and to the leading cases in which it has been examined, an attention proportioned to the interest and importance of the question, and to the magnitude of the interests involved in the present case, and we have been greatly assisted by the learned briefs of painstaking and able counsel on' either side.

We think that the judgment of the Circuit Court should ·be affirmed. It is so ordered. All the judges concur.