WEB. M. RUBEY, ASSIGNEE, ETC., Respondent, v.
THE MISSOURI COAL AND MINING COMPANY ET AL. ;
WILLIAM F. FORCHT, INTERPLEADER, Appellant.

21   159
38   631
21   159
101m146
21   159
76   406
146m479

Kansas City Court of Appeals, March 2, 1886.

1. MORTGAGE—ACTION TO FORECLOSE—MAY BE EITHER AT LAW OR
IN EQUITY—CASE ADJUDGED.—An action, under *our* statutes, to
foreclose a mortgage, or deed of trust, is a legal action. But the
statutory mode of foreclosure is not exclusive. Notwithstanding
the mode prescribed by the statute, a party may forego the statu-
tory remedy, and pursue his rights in a court of chancery by a
bill in equity. "Where there are successive liens or incum-
brances, it is * * * promotive of justice that the mortgage
·should be foreclosed in equity, where the accounts of all the par-
ties in interest can be readily adjusted, and the trust fund equi-
tably distributed among all the claimants." Jones on Chattel
Mortgages, section 779. The proceeding, in this case, was a pro-
ceeding in equity, and not under the statute.

2. CONTRACT — WRITTEN INSTRUMENT — INTERPRETATION OF HOW
MADE.—"The terms of every written instrument are to be under-
stood in their plain, ordinary and popular sense, unless they have
generally, in respect to the subject matter, as by the known usage
of trade or the like, acquired a peculiar sense distinct from the
popular sense, of the same words ; or unless the context evidently
points out that in the particular instance, and in order to
effectuate the immediate intention of the parties, they must be
understood in some other and peculiar sense." Greenleaf on
Evidence, sect. 278. "The intention of the parties is to be generally
ascertained from the instrument ; with the aid of such extrinsic
evidence as the law permits to be used in order to enable a court
to discover the meaning of the terms in the instrument and to
.apply them to the particular facts of the case." 2 Phillips on
Evidence, 633. But this does not extend to evidence of the private
views, or the secret intentions, or the known principles of parties to
the instrument ; nor to contradict the terms of an instrument, as
by showing that property covered by a mortgage was not in-
tended to be embraced in it. *Held*, that under the foregoing
rules, evidence of intention was properly excluded. That the
word "equipment," used by a mining company, included *mules*
.among the means of operating the mine, and that by the pro-
visions of the instrument in controversy an equitable lien was

created, which attached to the future acquired property when it was acquired ; and that this lien was valid, as against the interpleader in this case, whose deed of trust was taken subject expressly to the instrument in controversy.

APPEAL from Macon Circuit Court, HON. ANDREW ELLISON, Judge.

*Affirmed.*

Statement of case by the court.

This is an action brought by the assignee of the Macon Savings Bank for the purpose of foreclosing a deed of trust, dated August 24, 1878, executed by the Missouri Coal & Mining Company, for the purpose of securing the payment of a promissory note for ten thousand dollars given by said company to the said Macon Savings Bank. In the petition it is also alleged as follows :

"Plaintiff further states that he is informed and believes that subsequent to said twenty-fourth day of August, 1878, the said Missouri Coal & Mining Company made, executed and delivered to the defendant, Ben Eli Guthrie, another and further deed of trust, whereby all of the said real estate and property was conveyed to secure bonds issued by the said Missouri Coal & Mining Company, amounting to forty thousand dollars, which said bonds were intended by said Missouri Coal & Mining Company to be negotiated and sold for the purpose of paying off and discharging said bank and other debts of said coal company.

"That said bonds were never negotiated and sold, as plaintiff is informed and believes, but that a number of them amounting to $27,000.00, were deposited and are held as collateral security for other debts and demands, due from said coal company to said savings bank.

"That he is informed and believes that a portion of said bonds were heretofore deposited by the president

of said coal company, with the said Farmers' & Traders' Bank amounting to the sum of $13,000.00, as collateral security for sums of money due from said coal company to said Farmers' & Traders' Bank.

"That this plaintiff has no knowledge or information as to whether any of such bonds are held by any other parties.

"That plaintiff is informed and believes that the said defendants, James Epperson and Orr Sanders, claim some interest in the said real estate and coal mines, by virtue of an assignment to them of a lease to said coal lands, made by the said C. G. Epperson, as president of the said Coal & Mining Company, wherefore they are made parties defendant, in order that their pretended claim and interest may be examined and concluded.

"Wherefore the plaintiff prays judgment for the amount of said note, to-wit: Ten thousand dollars, with ten per cent. per annum interest thereon, compounded annually; that the equity of redemption of the said Missouri Coal & Mining Company, in and to said lands, be foreclosed; that the amount of plaintiff's lien, as such assignee, be adjudged and decreed as first lien on said lands and property, as against all the defendants; that said subsequent deed of trust to the said Guthrie be declared subject to the plaintiff's said deed of trust, and that all of the said real estate and property be sold to pay off and satisfy the judgment so rendered, free from all claims and demands; and that the proceeds be applied first, to pay off and satisfy the said judgment, and that the balance, if any, be applied in payment of the *bona fide* holders of said bonds, for value. That if it shall be found necessary for the safety and securing of plaintiff, the court appoint a receiver to take charge of, manage and control the said coal property and the said coal mines, with its machinery and apparatus, pending this suit, and until

the final order and decree of this court shall be rendered; for general relief, and for such other and further judgments, orders and decrees, as may be just and proper."

The Farmers' & Traders' Bank was a private, unincorporated banking association under the laws of this state, and it, as well as the members composing it, were made parties defendant. The said bank had made an assignment to Samuel J. Wilson for the benefit of all its creditors, and said Wilson had duly qualified as such assignee. He was made a party defendant. Ben Eli Guthrie, the trustee in the deed of trust, executed to secure the bonds issued by the said Missouri Coal & Mining Company, of which bonds the said Farmers' & Traders' Bank was alleged to hold a number, resigned as trustee; and Ben F. Stone was duly appointed as trustee in his place by the circuit court, and, by order of the circuit court, was made a party defendant.

Said Stone made answer averring want of knowledge or information sufficient to form a belief as to whether the note sued on by plaintiff yet remained unpaid and due as alleged in the petition. Further answering, said Stone alleged the execution and issuance of forty thousand dollars of mortgage bonds by said Missouri Coal & Mining Company on April 30, 1881, and the execution on that date by said company of a deed of trust on certain real and personal property, a portion of which was covered by the plaintiff's deed of trust, for the purpose of securing the payment of said bonds, and a breach of said deed of trust. The answer continued as follows:

"That this defendant is informed and believes, that of the said bonds, the plaintiff, as assignee of the Macon Savings Bank, is the legal holder and owner of fifty-four thereof, amounting to the sum of twenty-seven thousand dollars, face value ($27,000.00). And that the defendant, Samuel J. Wilson, as the assignee of the Farmers' & Traders' Bank, is the legal holder and owner of the balance and remainder thereof, to-wit:

Twenty-six thereof, amounting to the sum of thirteen thousand dollars, face value ($13,000.00).

"And this defendant prays the court, that if it be found on the trial of this cause, that the note and deed of trust sued on by plaintiff yet remain unsatisfied, and that the said plaintiff's deed of trust ought to be foreclosed, then, that this, his answer, be taken and held as a cross action in said cause, and that judgment be rendered upon said bonds in favor of the respective holders thereof, as aforesaid, and that the said deed of trust to secure said bonds be foreclosed, and that the equity of redemption of the said Missouri Coal & Mining Company in and to the property conveyed be forever foreclosed. And that the property so conveyed to secure said bonds be sold under the orders of this court, for the purpose of discharging and satisfying the several judgments so rendered, and for other general and proper relief."

William Forcht, surviving partner and administrator of Thomas G. Sharp & Company, on his motion and by leave of court, became a party defendant, and filed his interplea, claiming certain personal property, to-wit: sixteen mules, by virtue of a third deed of trust executed by the said Missouri Coal & Mining Company on January 16, 1882, to secure the payment of said company's promissory note for the sum of $924.05 given to said Thomas G. Sharp & Company. The said mules were also claimed under the second deed of trust.

Forcht, the interpleading defendant, also attacked the first deed of trust, claiming that it had been satisfied upon the record prior to the execution of his, the third deed of trust. But inasmuch as the second deed of trust, which was made to secure the payment of forty thousand dollars, more than the value of the entire property, was in full force and effect, it is conceded by Forcht's counsel, that the only controversy is between

the second and third deeds of trust as to the sixteen mules.

That part of the description of the second deed of trust touching the controversy is as follows :

"And, also, all equipments, machinery, implements, tools, instruments and fixtures of whatever kind or nature, that now are or may hereafter be, belonging or appertaining to said mines or any of them, or used in connection therewith."

The third deed of trust in express terms mentions sixteen mules.

At the time of the execution of the second deed of trust the Missouri Coal & Mining Company owned only seven mules. Nine of the sixteen mules claimed by Forcht were purchased by said company subsequent to the execution of said deed of trust, and prior to the execution of the third deed of trust.

Against Forcht the following oral evidence was introduced at the trial of the issues raised by the interplea :

"Thomas Wardell and Hopkins Evans testified that they were expert miners and operators of coal mines, and were acquainted with the mines of defendant, the Missouri Coal & Mining Company, and that it was impossible to operate or work said mines without pit mules, and the mules in question were pit mules, and were an essential part of the apparatus and equipments of said mines and which said mines could not be worked without pit mules."

Forcht introduced in evidence the deposition of Chas. G. Epperson, president of the Missouri Coal & Mining Company, in which said Epperson testified that he had not intended to include, and did not understand that he had included, the mules in the second deed of trust, which he had as said president executed. The court tried the issues presented by Forcht without the intervention of a jury, and decided them against him.

CHARLES P. HESS, for the appellant.

I.   The mortgage sued on, for $10,000, dated August

24, 1878, being satisfied of record by proper parties, and no notice to the contrary coming to interpleader, or any of his co-partners, said mortgage could not be set up against him. Rev. Stat., sect. 3311; *Chappell v. Allen*, 38 Mo. 213.

II.   The mortgage set up by defendant Stone, dated April 30, 1881, *did not include* the mules claimed by interpleader under his mortgage (dated January 16, 1882), he not having any notice beyond what the record imparted to him.   Jones on Chattel Mortgage, sects. 55-78.

III.   The foreclosure of a mortgage is a proceeding at law, and not in equity, and the mortgagor could only mortgage such property as he owned at the time and date of the mortgage.   *Mason v. Bernard*, 36 Mo. 384; Jones on Chattel Mortgages, sects. 70-77; *Jones v. Richardson*, 10 Metcalf (Mass.) 488; *Chesley v. Josselyn*, 7 Gray (Mass.) 490.

IV.   As against *third persons* there can be no substitution or exchange of property by parties to a mortgage, so that the lien will attach to the substituted property, unless the mortgage, take the latter into actual possession before the rights of third parties intervene.   Jones   on   Chattel   Mortgages,   sect.   154; *Simmons v. Jenkins*, 76 Ill. 429.

V.   This being an action at law, none of the principles of a court of equity can be applied here. *Mason v. Bernard*, 36 Mo. 390.   Neither can the principles applicable to railroad companies be applied here. See Rev. Stat., sect. 765.

VI.   The mortgage of Stone is void upon its face, because of mortgagor retaining property mortgaged, and reserving right to sell and dispose of machinery becoming useless, etc.; also, because mortgagor was permitted to manage and operate said mines and buy and sell everything connected therewith.   *White v. Graves*, 68 Mo. 223, and cases cited.

VII.   At the time the Stone mortgage was given,

the mortgagor did not have in contemplation the pur-chase of any particular property which, when acquired by it, should be covered by said mortgage; nor did it contemplate to produce any particular property at that time. Therefore, the cases of *Rutherford v. Stewart,* 79 Mo. 216; *Wright v. Bircher,* 72 Mo. 179, are dis-tinguishable. *Frank v. Playter,* 73 Mo. 677, is not in point. See, *Wilson v. Seibert,* 8 Am. Law Reg. 608, and cases cited.

DYSART & MITCHELL, for plaintiff-respondent.

BEN. ELI GUTHRIE, for defendants-respondents.

I. The appellant's interplea is in the nature of an action of replevin, a claim for possession of personal property; and both legal and equitable defences may be interposed. The prior mortgages being on record, appellant took with notice of their contents. He, also, had *actual* notice of the second, or Guthrie deed of trust (Stone, also, trustee); the latter is men-tioned in appellant's instrument, expressly, and made subject to it.

II. It was not necessary that the mules should be specifically mentioned in the Guthrie mortgage. It is not essential to schedule and itemize the property, and extrinsic evidence may be resorted to for the identifica-tion of the property. The coal mines were conveyed with all their apparatus and equipments, and whatever pertained to said mines necessarily passed by the Guthrie deed of trust. Jones on Chattel Mortgages (2 Ed.) sect. 53, *et seq.*

III. As a general proposition a man cannot sell or mortgage what he hath not, nor chattels which he may acquire in the future, in the general course of business and trade. But future-acquired property *may* be granted, when the same is not to be acquired for disposal, but as *appurtenant to other property owned by the grantor,* to render it more complete, operative and

productive. "If there be someting *in presenti*, of which the thing *in futuro* is to be the product, or with which it is to be connected, as necessary for its use, or as incident to it, constituting a tangible basis for the contract," then the thing *in futuro* may be granted. The mules in controversy fall within this principle. *Wright v. Bircher*, 5 Mo. App. 322 ; same case, 72 Mo. 179 ; *Rutherford v. Stewart*, 79 Mo. 216 ; *Frank v. Playter*, 73 Mo. 672 ; *Mitchell v. Winston*, 2 Story's Rep. 630 ; *Wilson v. Seibert*, 8 Am. Law Reg. 608, and cases cited.

HALL, J.—An action under our statutes to foreclose a mortgage or deed of trust is a legal action. *Mason v. Bernard et al.*, 36 Mo. 384. But the statutory mode of foreclosure is not exclusive. " It has also been the opinion that, notwithstanding the mode prescribed by the statute, a party might forego the statutory remedy, and pursue his rights in a court of chancery by a bill in equity." Scott, J., in *Riley v. McCord*, 24 Mo. 268.

In the latter case it was also said, "when a proceeding to foreclose a mortgage has been had, in order to determine whether it was under the statute or according to the course in chancery we must have recourse to the substance of the thing, and not to the rhetorical flourishes with which it may be accompanied." The proceeding in the case at bar was a proceeding in equity and not under the statute. The proceeding was properly instituted in equity, because, "if there are successive liens or incumbrances, it is eminently proper and promotive of justice that the mortgage should be foreclosed in a court of equity, where the accounts of all the parties in interest can be readily adjusted, and the trust fund equitably distributed among all the claimants." Jones on Chattel Mortgages, sect. 779.

" The terms of every written instrument are to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject

matter, as by the known usage of trade or the like, acquired a peculiar sense distinct from the popular sense of the same words ; or unless the context evidently points out, that, in the particular instance, and in order to effectuate the immediate intention of the parties, they must be understood in some other and peculiar sense." Greenl. on Evid., sect. 278 ; *Burnham v. Banks,* 45 Mo. 350 ; 2 Phillips on Evid. 632. The intention of the parties is to be generally ascertained from the instrument. "It may be laid down as a settled rule, that the intention of a party is to be ascertained from the meaning of the words in the instrument, and from those words alone, with the aid of such extrinsic evidence as the law permits to be used in order to enable a court to discover the meaning of the terms in the instrument, and to apply them to the particular facts of the case." 2 Phillips on Evid. 633. In the same volume of said work on the following two pages extensive quotations from an opinion by Tindal, C. J., are found in the text. After stating the general rule, and the instances in which evidence *dehors* the instrument is admissible, the chief justice said : "But whilst evidence is admissible in these instances for the purpose of making the written instrument speak for itself, which, without such evidence, would be either a dead letter, or would use a doubtful tongue, or convey a false impression of the meaning of the party, I conceive the exception to be strictly limited to cases of the description above given, and to evidence of the nature above detailed ; and that in no case whatever is it permitted to explain the language of a deed by evidence of the private views, the secret intentions, or the known principles of the party to the instrument, any more than by express parol declarations made by the party himself, which are universally excluded ; for the admitting of such evidence would let in all the uncertainty before adverted to ; it would be evidence which in most instances could not be met or countervailed by any of an opposite

bearing or tendency, and would in effect cause the secret undeclared intention of the party to control and predominate over the open intention expressed in the deed." And it is laid down by Mr. Jones, in his work on Chattel Mortgages, that "parol evidence is not admissible to contradict the terms of a mortgage, by showing that property covered by it was not intended to be embraced in it. Such evidence must be consistent with the description. It cannot be used to supply what the parties have omitted, or to reject a reference in the description which is true." Section 64.

The trial court, therefore, properly disregarded the deposition of Epperson, introduced by Forcht, as to what was his intention and understanding, in making the second deed of trust, with reference to the mules in controversy.

The words used in the second deed of trust to describe the property included therein must be understood to have been used in their plain and ordinary sense, as applied to the subject matter. One of the definitions of the word, equipment, given by Mr. Webster is, "third (Civ. Eng.) the necessary adjuncts of a railway, as cars-locomotives." The equipments of a coal mine are all its necessary adjuncts, and include pit mules which are an essential part of its apparatus and without which it cannot be operated. Parol evidence was admissible to show that the mules in controversy were pit mules and that they were necessary adjuncts of the mine, on the principle that such evidence is admissible to identify the mort‘gaged property. Jones on Chattel Mortgages, sect. 64.

Within the meaning of the word, "equipments," used in the second deed of trust, were embraced the pit mules, which were essential to the operation of the mine. The only doubt that exists as to whether the mules were included in said deed of trust, is on account of said word being immediately followed by particular words referring to special kinds of equipments, which without their use would have been included in the gen-

eral term, equipments. Had the general word, equipments, been connected with the following particular words by any phrase of like import with "such as," "consisting of," or "as follows," indicating an intention to limit the meaning of the general word, it would be confined to equipments of a like character with those embraced in the particular words. Jones on Chattel Mortgages, sect. 77, and cases cited. In the absence of such connecting phrase we do not think that the meaning of the general word, equipments, can be held to be thus limited by the following particular words. We hold that it is not thus limited.

The provisions of the second deed of trust as to the future acquired equipments fall within the principles of the following cases : *Wright v. Bircher*, 5 Mo. App. 322 ; *Wright v. Bircher*, 72 Mo. 179 ; *Rutherford v. Stewart*, 79 Mo. 216 ; *Frank v. Playter*, 73 Mo. 672 ; *France v. Spencer*, recently decided by the supreme court, and not yet reported.

By these provisions an equitable lien was created, which attached to the future acquired property when it was acquired. And that lien was a valid and subsisting lien as against Forcht because his deed of trust was taken, by an express provision of it, subject to the second deed of trust, and, therefore, with actual notice of said second deed of trust. The equitable lien, it is true, could be enforced only by an equitable proceeding (*France v. Spencer*, *supra*) ; but, as we have seen, this proceeding is an equitable proceeding.

Judgment affirmed. All concur.