Wolff v. Ward.

WOLFF *et al.* v. WARD *et al.*, *Appellants.*

DIVISION TWO.

1.  **Practice**: CHANGE OF VENUE: RECORD PROPER: EXCEPTIONS. Applications for changes of venue are not a part of the record proper, and the ruling of the trial court thereon will not be reviewed, unless exceptions are saved and the matter is brought to the attention of the trial court in the motion for a new trial.

Wolff v. Ward.

2. ———: APPOINTMENT OF RECEIVER. A like rule is applicable to the action of the court in the appointment of a receiver.

3. ———: CHANGE OF VENUE. Whether or not an application for a change of venue asked eight or ten days after knowledge of the cause thereof came to the appellant is timely made, rests largely in the discretion of the trial judge.

4. ———: ———. An application for a change of venue because of the prejudice of the inhabitants of the county is properly overruled where the case is one in equity, triable by the court.

5. Mortgage: FORECLOSURE: EQUITY. A mortgagor can in this state maintain a bill in equity for the foreclosure of the mortgage.

6. ———: ———: ———. The petition in this case examined and *held* to be a bill in equity to foreclose a mortgage and to state facts sufficient to constitute a good cause of action in equity.

7. Deed of Trust: SALE: TITLE OF PURCHASER. A sale by a trustee under the power conferred by a deed of trust, whether the sale be valid or invalid, vests in the purchaser the title of the *cestui que trust*.

8. ———: ———. A sale under the naked power contained in a deed of trust must be made in strict compliance with the terms and conditions prescribed in the deed.

9. ———: SALE, CHANGE OF TIME OF: NOTICE. Where the day of sale of property advertised to be sold under a deed of trust is changed, the notice of sale must be published for the full time required by the terms of the deed of trust, after such change is made.

10. Practice: DEMURRER. A defendant who stands on his overruled demurrer and appeals is as much bound by the admissions of the demurrer in the appellate court as he was in the trial court.

11. ———: FORECLOSURE OF MORTGAGE: PARTIES. Persons interested in the subject-matter of a suit in equity to foreclose a mortgage may be joined as plaintiffs though their interests are different.

12. ———: CAPTION OF AMENDED PETITION: OMISSION OF NAME. The omission of the name of a party defendant from the caption of an amended petition is not material where such name appears in the body of the petition.

13. ———: FORECLOSURE OF MORTGAGE: RECEIVER. The court in a suit in equity to foreclose a mortgage has the power to appoint a receiver to manage the property, where the defendant is insolvent and the property is insufficient to pay the debt.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*M. Kinealy* and *Jas. R. Kinealy* for appellants.

(1) If the sale was void, as alleged, Hughes and G. P. Wolff, or G. P. Wolff alone, became the legal owner of the mortgage. *Brown v. Smith*, 116 Mass. 108; *Jackson v. Bowan*, 7 Cowen, 13; *Vroom v. Ditmas*, 4 Paige, 526; *Robinson v. Ryan*, 25 N. Y. 370. (2) There was no equitable relief necessary to put plaintiff, Geo. P. Wolff, in a position to institute a suit for a foreclosure of the deed of trust, if it was still in force, and hence the foreclosure was purely at law, and respondent was entitled to a trial by jury. *Smith v. Finn*, 77 Mo. 499; *Nolan v. Brewster*, 17 Mo. App. 497; *Fithian v. Monks*, 43 Mo. 502; *Mason v. Barnard*, 36 Mo. 384. (3.) The court, therefore, erred in refusing a change of venue on the respondent's application, grounded on undue influence over the inhabitants of the city, the application being in due form. *Dowling v. Allen*, 88 Mo. 300. (4) The court should have granted the second application for a change of venue. *Dowling v. Allen*, 88 Mo. 300. (5) The petition stated no cause of action, because the sale by Wolff, trustee, has not been declared void for want of sufficient notice, or at all, and it does not appear that appellant is objecting to that notice and respondents will not be heard to do so. Dillon on Sales under Deeds of Trust; 2 Am. Law Reg. (N. S.) sec. 37, p. 739; sec. 28, p. 721; and cases cited; *Greenleaf v. Queen*, 1 Ret. 138; *Beebe v. De Baum*, 3 Eng. 510; *Echols v. Dimmick*, 2 Stew. 144; *Foster v. Gorie*, 5 Ala. 428; *Gift v. Anderson*, 5 Humph. 577; *Hall v. Harris*, 11 Tex. 300; *Wightman v. Doe*, 24 Miss. 675. Moreover, the notice given by Wolff, the trustee in the deed of trust, was sufficient, and the sale was not void for want of notice. No one could have been, or was, misled by it. *Gray v. Shaw*, 14 Mo. 341; *Powers v. Kruckhoff*, 41 Mo. 425;

*Stephenson v. January*, 49 Mo. 465. And the change of date from Monday, May 22, to Monday, May 23, made so soon after the first insertion, did not avoid the sale. *Sayles v. Smith*, 12 Wendell, 60; *Jackson v. Clark*, 7 Johns. Rep. 225; *Dana v. Farrington*, 4 Minn. 437; *Bennett v. Brundage*, 8 Minn. 432; *DeJarnett v. DeGiverville*, 56 Mo. 440; Jones on Mortgages, sec. 1874. (6) The order appointing the receiver was erroneous, because, after the application for change of venue was filed, the court should not have done anything in the case save to allow the change, and every subsequent act of the court is erroneous. *Colvin v. Six*, 79 Mo. 198; *State v. Daniels*, 66 Mo. 192. And it was improper to sequestrate the rents, before foreclosure, as it does not appear that any lien was given on them by the terms of the deed of trust. 1 Jones on Mortgage, secs. 771, 772. Until foreclosure, the rents belong to the mortgagor. *In re Ass'n*, 96 Mo. 632. It was erroneous and oppressive to oust respondent from her home by a mere interlocutory order, made on an *ex parte* hearing, and without any right of appeal from the order. *Callanan v. Shaw*, 19 Iowa, 183; *Morrison v. Buckner*, Hemp. 442; *Hackett v. Snow*, 10 Ir. Eq. 220. And such an order was further erroneous on proceedings to foreclose the deed of trust described in petition. *Oliver v. Decatur*, 4 Cranch C. C. 455; *Berney v. Sewell*, Jac. and W. 1647; *Ackland v. Gravener*, 31 Bear. 55. (7) Marcus A. Wolff had no interest in the property; he was merely a trustee to sell and execute a power, and was not a proper party to this suit. *Rogers v. Tucker*, 94 Mo. 352. (8) There is a misjoinder of parties plaintiffs; Hughes is not a necessary party. See cases cited under point 1, *ante*. (9) Edward Ward was not retained as a party defendant in the amended petition, but he was, of course, a necessary party. The omission of the name from the title is bad on demurrer, and it is not supplied by any sufficient allegation in the body of the petition. Bliss on Code Plead., sec. 145. (10) The appellant

was oppressed and injured, and was put to unnecessary cost and expense, and deprived of her constitutional right of trial by jury, by the erroneous action of the court below.

*Ellerbe & Hicks* for respondents.

(1) The petition stated a case in equity ; the relief sought, and to which plaintiffs were entitled under the facts alleged, could not be obtained at law. Hence, the cause was not triable by a jury, and the change of venue, asked on the ground of "undue influence over the inhabitants," was properly refused. *Lee v. Smith*, 84 Mo. 304. (2) The application for change of venue, on the ground of plaintiffs' "undue influence over the mind of the judge," shows, on its face, that knowledge of such influence came to the applicant at the time of the institution of the suit, and before any steps were taken therein by such applicant. Subsequent to such knowledge, various steps were taken by the applicant in the cause, and various matters presented to the court for consideration. The court was in constant session, and no reason appears or was given for appellants' delay in making such application. Under such circumstances, the application was properly denied. *State ex rel. v. Matlock*, 82 Mo. 455. Whether the application was made as soon as practicable after information received, is a question resting in the sound discretion of the trial court. *State v. Matlock*, cited *supra*. The same application for change of venue was considered by the St. Louis court of appeals, upon a petition for a writ of prohibition against the trial judge. *State ex rel. v. Lubke*, 29 Mo. App. 555. (3) The sale by the trustee was invalid by reason of the defect in the notice, it not having been published the required number of days. Whether invalid or not, since it stands admitted that appellants have constantly asserted its invalidity, they should not be heard to assert its validity. (4) The trustee's

sale being invalid, the cancellation of the trustee's deed and of the deed of trust subsequently made to Hughes, was essential to a new sale. Upon the faces of such deeds and the record thereof, they appeared regular and valid, and divested the title of the trustee and appellants. No sale, either upon foreclosure or upon re-execution of the power of sale, could have been made with fairness to appellants or respondents. While such deeds remained apparently in force, no purchaser could have been found. (5) Under the facts alleged, plaintiffs were entitled to a cancellation of the deeds referred to, and to an accounting and judicial ascertainment of the sums due them, and to a sale of the mortgaged premises. A judicial determination of these matters was necessary to a final adjudication of the rights of the parties, and to afford complete relief. All the parties concerned in the title to the mortgaged premises were proper parties. *Henry v. McKerlie,* 78 Mo. 416, and cases there reviewed; *Mastin v. Halley,* 61 Mo. 196; *Jones v. Mack,* 53 Mo. 147; *Beedle v. Mead,* 81 Mo. 297; 2 Pomeroy, Eq., sec. 834. (6) Appellants made no objection and saved no exception, as to the appointment of a receiver, nor is any of the evidence upon which the court below made the appointment preserved in the record. Hence, the propriety of such appointment will not be reviewed upon appeal. The receiver was properly appointed. High on Receivers, secs. 643, 646; *In re Life Ass'n,* 96 Mo. 637; *Cox v. Volkert,* 86 Mo. 505. (7) The mere omission from the caption of an amended petition of the name of one of the defendants is of no significance. Although Edward Ward is not named in the caption, he is named and retained as a defendant throughout the body of the petition. *Slate ex rel. v. Patton,* 42 Mo. 537, cited in Bliss on Code Pleading, sec. 145; *Headlee v. Cloud,* 51 Mo. 301; *Fugle v. Hobbs,* 42 Mo. 537. (8) It is submitted, that the decree as entered below was proper, and that the objections now urged are captious and without substantial merit.

Wolff v. Ward.

THOMAS, J.—On January 20, 1888, the plaintiffs filed their petition in this cause on which summons was issued and served on Catherine Ward and Edward Ward, defendants, on the same day (Friday). The case was assigned to courtroom number 1.

The original petition is not sent up in the record, and, hence, we are not able to determine what it contained, but we have a right to presume, and the argument of the appellants' counsel in this court virtually concedes, that it set forth, substantially, the same cause of action against the defendants, as is set forth in the amended petition. On the twenty-third day of January, defendant, Catherine Ward, filed her application for change of venue from the city of St. Louis, on the ground that the opposite party had an undue influence over the minds of the inhabitants of that city, to the extent that she could not have a fair trial therein. This application was by the court overruled, presumably on the ground that this was a suit in equity, and, as defendants were not entitled to a trial by jury, it made no difference about the prejudice of the people. Thereupon the plaintiffs applied for the appointment of a receiver, and at the instance of defendant, Catherine Ward, this was continued to January 31, and on that day she filed an application for a change of venue, on the ground of the undue influence of the opposite party over the mind of the judge. In this application, she avers that knowledge of this undue influence came to her "about the last part of the week before last." This application was also overruled. On the same day the court made an order appointing Leslie A. Moffett receiver, to take charge of and manage the property in controversy during the litigation.

On the twentieth day of March, plaintiffs filed an amended petition, as follows:

"George P. Wolff, James B. Hughes,
    Marcus A. Wolff,
                        Plaintiffs,

        *v.*

"Catherine Ward, Edward T. Farish,
    Mary Sweeney,
                        Defendants.

"The above-named plaintiffs, for their amended petition, state, that heretofore, to-wit, on the ninth day of October, 1880, one Rosanna Manley, then being the owner of the realty hereinafter mentioned, by her certain deed of trust of said date executed by her, which deed is recorded in book 642, on page 247 thereof, in the office of the recorder of deeds of the city of St. Louis, conveyed to plaintiff, Marcus A. Wolff, as trustee for plaintiff, James B. Hughes, the following described premises situated in the city of St. Louis, state of Missouri, to-wit:

"A lot of ground in block number 139 of said city, and more particularly described as follows: Beginning in the west line of Sixth street, distant one hundred and forty-four feet south of the south line of Wash street, thence running west at right angles with Sixth street, one hundred and twenty-seven feet, six inches, to the east line of an alley, fifteen feet wide, thence south along said east line of said alley, twenty-one feet, six inches, more or less, thence east one hundred and twenty-seven feet, six inches, to the west line of Sixth street, thence north along the west line of Sixth street, twenty-one feet, six inches, to the place of beginning, with buildings and improvements thereon.

"That said conveyance was to said M. A. Wolff in trust to secure to said James B. Hughes, the party of the third part therein, the payment of seven promissory notes therein described, given for money borrowed of him by said Rosanna Manley, of even date of said deed, payable to the order of James B. Hughes, and bearing interest from maturity at ten per centum

Wolff v. Ward.

per annum, one of said notes, the principal, being for the sum of $5,000, and payable three years after date, and the others being semi-annual interest notes, each for the sum of $200, and payable, respectively, in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date.

"That in and by said deed said Rosanna Manley did covenant and agree with said party of the third part therein, his indorsees and assignees, among other things, to cause all taxes and assessments, general and special, then existing against said property to be paid on demand, and all such thereafter levied or charged on it or therefor to be paid within the times required by law, and also to keep the improvements upon said premises constantly insured, until said notes should be paid, in the sum of not less than $5,000, and to keep constantly assigned or pledged and delivered to the party of the second part therein, said trustee, for further securing the payment of said notes, all and every policy or policies of insurance held by or issued to her upon said improvements, and also that, if any or either of said agreements should not be performed as aforesaid, then the said third party or his indorsees might effect such insurance for such purpose and pay such taxes, and for repayment of all moneys paid in the premises and interest thereon the said conveyances should be a security in like manner and with like effect as for the payment of said notes.

"That it was further provided in said deed of trust as follows : 'Now, if said notes be paid when they become due and payable, respectively, and said agreements be faithfully performed, as aforesaid, then this deed shall be void, and the property hereinbefore conveyed shall be released at the cost of said party of the first part; but if default be made in the payment of said notes, any or either of them, when they become due and payable, or in the faithful performance of any or either of said agreements as aforesaid, then this deed shall

remain in force, and the said party of the second part, or in case of his death, inability or refusal to act, or absence from the said city of St. Louis, when authorized to sell under these presents, and a sale be desired by the holder of said notes, any or either of them, then the sheriff of St. Louis City, Missouri, for the time being, or such other person as may be thereto appointed by any court having jurisdiction of the property hereinbefore described (who shall thereupon become his successor to the title of said property, and the same become vested in him, in trust for the purposes and objects of these presents, and with all the powers, duties and obligations thereof), may proceed to sell the property hereinbefore described, or any part thereof, at public vendue to the highest bidder for cash, at the eastern front door of the courthouse, in the said city of St. Louis, first giving twenty days' public notice of the time, terms and place of sale, by the advertisement in some English newspaper, printed and published in said city of St. Louis; and upon such sale shall execute and deliver a deed in fee simple of the property sold to the purchaser or purchasers thereof (all the recitals whereof shall be *prima facie* evidence of the facts therein set forth), and receive the proceeds of said sale, out of which he shall pay, first, the cost and expenses of executing this trust, including a reasonable compensation to the trustee for his services, to be not less than $25 in any case, and next to the payer thereof, upon the usual vouchers therefor, all moneys paid for insurance and taxes and judgments upon statutory lien claims as hereinbefore provided for, when not paid as hereinbefore agreed, and interest thereon at the rate of ten per cent. per annum from the times of their payment; and, next, of such of said interest notes as are due and unpaid, and all interest earned thereon; and, next, if enough therefor, said principal note whether due or not, and all interest earned therefor and thereon; and, if enough therefor, then apply towards their payment what there is, and in

case all said demands be fully satisfied, from said proceeds, and any of said interest notes, the same shall be canceled, and the balance of said proceeds, if any, shall be paid to the said Rosanna Manley or her legal representatives.'

" Plaintiffs further state that thereafter on the fourteenth day of October, 1880, said Rosanna Manley, by her deed of trust of the last-named date, conveyed said premises to defendant, Edward Ward, and his successors in trust forever, in trust for the sole and separate use of his wife, the defendant, Catherine Ward, the daughter of Rosanna Manley, which deed is recorded in said recorder's office in book 642, at page 265 thereof; that said defendant, Catherine Ward, in and by such deed, did agree, as a part of the consideration thereof, to assume all deeds of trust then upon said premises in such deed conveyed, and the said Edward and Catherine Ward ever since the last-named deed have been, and now are, entitled to said premises subject to the deeds of trust herein mentioned and claim to be the owners of said premises.

" Plaintiffs say that the defendants, Edward T. Farish and Mary Sweeney, claim to have some interest or estate in said premises, and for that reason are made parties defendant herein.

" Plaintiffs state that the several interest notes mentioned in said deeds of trust were paid, but that the said principal note of $5,000 was not paid at its maturity, and the plaintiff Hughes ever since the execution of the last-named note hath been and now is the holder thereof.

" Plaintiff states that there was executed in duplicate by said Hughes on the one part and said defendants, Edward and Catherine Ward, on their part, the following instrument :

" 'St. Louis, October 9, 1883.

" ' Received of Edward and Catherine Ward their six negotiable promissory notes, dated October 9, 1883,

executed by said C. and E. Ward, drawn to the order of James B. Hughes, and payable in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date, respectively, which said notes, if promptly paid at maturity, respectively, and only when paid, shall be in lieu of seven-per-cent. semi-annual interest accruing on a certain note of Rosanna Manley for the principal sum of $5,000, dated October 9, 1880, due and remaining unpaid, and secured by deed of trust on same date, executed by said Manley to M. A. Wolff, trustee, and recorded in the recorder's office of St. Louis City in book 642, page 247.

" 'Now, if the said notes for the sum of $175 each, be promptly paid as they severally become due, respectively, then the payment of said principal note for the sum of $5,000 as aforesaid shall ( at the request of said E. and C. Ward, as evidenced by their signature thereto ) be extended for the period of thirty-six months from the ninth day of October, 1883.

" 'But if the said notes for the sum of $175, each or any of them, or any part of either, be not promptly paid when due, or if said Ward shall neglect or refuse to faithfully perform the covenants in said deed of trust, as to insurance and the payment of taxes, as therein provided, then, in either of such cases, this agreement shall be null and void, and the legal holder of said principal note for $5,000 may proceed to enforce payment thereof under said deed of trust, the same as if this agreement had not been made.'    Signed in duplicate.

"That the defendant Ward executed and delivered to Hughes the several notes mentioned as being made by them in the instrument last described; that, since the institution of this suit, plaintiffs have been informed and now so aver that said Rosanna Manley died in said city where she resided, in June, 1886, leaving no property belonging to her.

"Plaintiffs state that the defendants and Rosanna Manley failed and neglected to pay state or city taxes

levied and assessed on said premises for the years 1884, 1885, 1886, so that the same became and remained delinquent. That there then was duly made and issued on the eighteenth day of September, 1886, in accordance with the charter of the city of St. Louis, a special tax bill of the last-named date in favor of J. Donovan & Co. in the sum of $156.67, which became a lien on said premises, which bill the defendants failed to pay, satisfy or discharge; that the defendants Ward neglected and failed to pay, or cause to be paid, when the same became due, the last of the interest notes executed by them, to-wit, the interest note payable thirty-six months after date, on the ninth of October, 1883, and maturing on the ninth of October, 1886.

"That. the defendants and Rosanna Manley neglected and failed to pay the principal note of $5,000, made by Rosanna Manley, or any of the interest earned thereon, save in so far as such interest was paid by payment of the first five interest notes made by said Wards as above mentioned; and that said general and special taxes and the interest and penalties thereon, and the said thirty-six months' Ward interest note, and the said note of $5,000 made by Rosanna Manley and the interest accrued thereon, have never been paid, satisfied or discharged by the defendants or any of them, or for them, except as hereinafter stated, and that the defendants and Rosanna Manley failed to keep the improvements insured as provided by the deed of trust aforesaid; that the said taxes and notes last mentioned remaining unpaid, plaintiff, M. A. Wolff, as trustee in said .deed of trust, at the request of said Hughes, caused said premises to be advertised for sale by notice, giving time, terms and place, published in the *Missouri Republican*, a newspaper printed and published in the city of St. Louis.

"That said advertisement, as originally published on the thirtieth day of April, 1887, and as published on the first, second and third days of May, 1887, by mistake

and inadvertence gave notice for a sale to be had on Monday, May 22, instead of Monday, May 23, 1887, the day intended by said trustee ; that, discovering said mistake, said trustee caused said notice to be changed, so that as published daily from May 4 to May 23, 1887, both inclusive, it gave notice of a sale to be had on Monday, May 23, 1887, so that said notice, as corrected, was published but nineteen days, excluding the day of sale, before the sale had on the twenty-third day of May, 1887.

"That, believing said notice so published to be sufficient and his actions thereunder valid and proper, said trustee proceeded to sell said premises in accordance with the terms of said deed of trust and said notice, and at such sale, plaintiff, George P. Wolff, was the highest bidder at the sum of $4,250, and said premises were sold to him ; that, thereafter, said trustee, in accordance with the terms of said deed of trust, executed a deed as trustee thereunder to said George P. Wolff, purchaser at said sale, conveying said premises to said George P. Wolff, which said deed is dated the twenty-third day of May, 1887, and is recorded in book 831, at page 145, of said recorder's office ; but that said defect in said notice does not appear in said deed last mentioned.

"That plaintiff, George P. Wolff, believing that he had acquired good title to said premises under said sale, proceeded to pay off and discharge the liens for general and special taxes, paying, in discharge of the general taxes of 1884, 1885 and 1886, the thirtieth day of June, 1887, the sum of $496.76, and in discharge of the special tax bill on the twenty-third day of August the sum of $176.50 ; that he further caused said premises to be insured, paying as premium therefor on the third day of August, 1887, the sum of $45, and that he expended for necessary repairs on said premises the sum of $34.85 between the seventeenth day of September and the thirtieth day of September, 1887.

"Plaintiffs state that the said George P. Wolff, believing that he had good title as aforesaid, borrowed from said Hughes, and the said Hughes, believing that George P. Wolff had good title as aforesaid, loaned to said George P. Wolff the sum of $5,000, on the faith and security of said premises, to secure which indebtedness said George P. Wolff and Alice, his wife, made their certain deed of trust of date May 23, 1887, conveying to M. A. Wolff, trustee of James B. Hughes, the said premises to secure the payment of seven promissory notes made by said George P. Wolff of even date therewith, payable to the order of said James B. Hughes, one for the principal sum of $5,000, the others being for semi-annual interest to be earned thereon at rate of six per cent. per annum, which notes said George P. Wolff then made and delivered to said Hughes.

"That said premises at the time of the deed to George P. Wolff were occupied by a number of tenants then holding under the defendants Ward, some of whom thereafter attorned to said George P. Wolff, and said George P. Wolff has collected rents from said tenants, so attorning, amounting to —— dollars, for which he now stands ready to account.

"Plaintiffs state that the defendants, other than Farish and Sweeney, have, since sale, constantly asserted said sale to be void and instituted a suit against the plaintiffs to set the same aside, but such defendants did not prosecute the same and dismissed their suit when it was called for trial.

"That the defendants, other than Farish and Sweeney, have refused to surrender possession of the premises to said George P. Wolff, and have aided and assisted the occupants of said premises in resisting steps by said George P. Wolff, to obtain possession of said premises; the defendants, other than Farish and Sweeney, claiming, and causing such tenants to claim, that the said sale to George P. Wolff was void.

"Plaintiffs say that they have offered to defendants, other than Farish and Sweeney, to reconvey to them said premises, and to satisfy their said debts and are now ready so to do, upon payment by defendants to plaintiffs of the debts secured by said Manley deed of trust, and the expenditures made by Geo. P. Wolff, as aforesaid.

"Plaintiffs say that though, at the times hereinbefore stated, they believed the said sale and proceedings thereunder to be valid yet they are now advised by counsel, and so aver, that by reason of said mistake and defect in said notice of sale, that said sale by said trustee, to George P. Wolff, under said deed of trust from Rosanna Manley was void.

"Plaintiffs say that the defendants Catherine and Edward Ward have no means or property save such interest as they may have in the premises described; that the defendants Edward and Catherine Ward, notwithstanding said sale, ever since hath been, and now are, collecting large rents from said premises which they convert to their own use, and they have not paid, or offered to pay, anything towards either principal or interest of their indebtedness.

"Plaintiffs say that said premises are and will be insufficient in value to pay the debt secured by the first-mentioned deed of trust, and that, upon foreclosure thereof by sale, a portion of said debt will remain unpaid.

"Plaintiffs further aver that, unless said rents be collected and applied towards payment of the debts secured by said deed of trust from Rosanna Manley, the plaintiff will be wholly without remedy for the collection of such portion of the indebtedness remaining unpaid after the sale of the premises as hereinafter prayed.

"To the end therefor, that the said deed of trust from Rosanna Manley may be foreclosed for the payment of said debts secured thereby, the plaintiffs pray

that a receiver heretofore appointed to take possession of the premises hereinbefore described, and collect the rents and profits ensuing therefrom until the further order of this court may continue to hold possession and collect such rents; that the said deed from M. A. Wolff as trustee to Geo. P. Wolff, and the said deed from George P. Wolff and wife to M. A. Wolff, trustee of James B. Hughes, be set aside; that an account be taken of the principal and interest of the sums due from defendants, and each of them, and said Rosanna Manley, by reason of the matters hereinbefore alleged, and that the plaintiff, Geo. P. Wolff, and James B. Hughes have judgment for the respective sums so ascertained and costs herein to be levied on the premises hereinbefore described as is provided in the statutes of Missouri; that if, upon such sale of said premises, sufficient be not realized to satisfy such judgment, interest and costs, that the said receiver pay to the plaintiffs from the funds in his hands the residue of such judgment or apply said funds towards said residue; that if there be then a residue of such judgment, that such residue may be levied of other goods, chattels, lands and tenements of the defendants; that, upon sale of said premises, possession of said premises may be delivered by said receiver to the purchaser thereof, and that plaintiffs be granted such other and further relief as to the court may seem meet and proper in the premises."

On April 4, 1888, the cause was, by consent, transferred to courtroom 2, and next day a demurrer was filed to the amended petition assigning as grounds of demurrer:

"*First*. The petition failed to state facts constituting a cause of action.

"*Second*. There is a misjoinder of causes of action in the petition.

"*Third*. There is no equity in the bill.

"*Fourth*. There is a misjoinder of parties plaintiff.

"*Fifth*. There is a defect of parties defendant."

This demurrer was overruled and defendant, Catherine Ward, refused to plead further, judgment was given against her May 1, and the court rendered a final decree, and finds all the allegations of the amended petition to be true. The final judgment was entered July 3. It finds there is due Hughes, mortgagee, $6,115.06 for principal and interest, of the debt due on the Manley notes, secured by deed of trust, to his trustee, M. A. Wolff. Finds there is due to Geo. P. Wolff, $683.20 for taxes and insurance paid by him, after charging him with rents collected by him. Finds $635.21 due Mary Sweeney. It sets aside " and for naught" holds the deed of Marcus A. Wolff, trustee to Geo. P. Wolff, and the deed of trust of Geo. P. Wolff and wife to Hughes' trustee. Orders the sheriff to sell the property and out of the proceeds, *first*, pay all costs; *second*, pay Geo. P. Wolff amount found due him; *third*, pay Hughes the amount found due him; *fourth*, pay Mary Sweeney the amount found due her. Orders the receiver to turn over the possession of the property to the purchaser, and ordered the sheriff to hold the surplus subject to the order of the court. Defendants, Catherine Ward and Edward Ward, appeal. No motion for rehearing or new trial was filed, nor is there any bill of exceptions, and the case before us is on the record proper.

The grounds urged in this court for a reversal of the judgment are: *First*. That the court erred in overruling the application for a change of venue on account of the undue influence of the opposite party over the minds of the inhabitants of St. Louis. *Second*. That there was error in overruling application for change of venue on account of the undue influence of the opposite party over the mind of the judge presiding in courtroom number 1. *Third*. That the petition does not state a cause of action, and that there is a misjoinder of plaintiffs. *Fourth*. That defendant Edward Ward's name was omitted from the caption of the amended petition, and he was, therefore, not a party to the suit, and it was

error to proceed without him.   *Fifth.*   That the court committed error in appointing a receiver.

The record shows that defendant, Catherine Ward, excepted to the action of the court in overruling her application for change from the people and the judge. These applications do not constitute a part of the record proper.   *Stearns v. Railroad,* 94 Mo. 317, and cases cited.   And this court will not review the action of the court thereon unless exceptions were saved and the matter brought to the attention of the court by motion for new trial.   *Railroad v. Carlisle,* 94 Mo. 166, and cases cited.

As to the action of the court in the appointment of a receiver, there was no exception, and the matter not having been called to the attention of the trial court by motion for new trial, it cannot be reviewed on the record before us.   As to the application for a change of venue from the judge, however, we will say that the matter rests largely in the discretion of the court, and in this case the application was made eight or ten days after knowledge of the cause for which the change came to the applicant, and it was for the court to say whether the application was timely or not.   *State ex rel. v. Matlock,* 82 Mo. 455 ; *State ex rel. Ward v. Lubke,* 29 Mo. App. 555.

This last case was an application by Mrs. Ward for a writ of *mandamus* to compel the judge to grant her a change of venue in this case.   It was refused by the court of appeals.   This refusal to grant a change of venue from courtroom number 1 did not operate to the prejudice of defendants, however, in this case, because it was on stipulation transferred to another room for determination. As to the other application for a change of venue, and the action of the court in the appointment of a receiver, we will say, that the questions discussed are necessarily involved in the determination of the demurrer filed by appellant, Catherine Ward, and by the court overruled.

If the petition in this case is held to be a bill in equity, and states facts sufficient to constitute a cause of action, then it is conceded that the application for change of venue on account of undue influence over the minds of the people ought to have been overruled, and in that case there is no question that the court had jurisdiction to appoint a receiver, there being an allegation that the respondents were insolvent and the property not worth the debt. *In re Life Ass'n of America,* 96 Mo. 632 ; *Cox v. Volkert,* 86 Mo. 505 ; High on Receivers, 643-6 ; 2 Jones on Mort., sec. 1516, *et seq.*

This, therefore, brings us face to face with the issues presented by the demurrer. These are : *First.* Can a mortgagor resort to a bill in equity in Missouri for the foreclosure of a mortgage? *Second.* Can the petition in the case be held to be a bill in equity for the foreclosure of a mortgage, and does it state facts sufficient to constitute a cause of action? and *third,* has each of the plaintiffs an interest in the proceeding, and, if so, were they all properly joined as plaintiffs in the bill ?

I.   We think there is no question that parties may resort to a bill in equity in this state for the foreclosure of a mortgage.   Counsel for appellants in their brief say :   "It is true, the courts in certain cases in this state decree an equitable foreclosure, where a case for equitable relief exists, necessary to the effectuation of the foreclosure and so bound up with the case for foreclosure that it cannot be tried separately."   It has often been held that a proceeding under the statute for foreclosure is a proceeding at law.   77 Mo. 499, and cases cited.   But it has never been held that courts of equity had, by the statute, been deprived of jurisdiction, in proper cases, to afford relief.   21 Mo. App. 159.   The general rule that these courts have jurisdiction in such cases is well established.   2 Jones on Mort., secs. 1443-1450.

II.   Does the petition in this case state facts sufficient to constitute a cause of action in a court of equity

which will authorize it to assume jurisdiction and grant relief? The demurrer admitted the facts well pleaded, and, as appellants stood on the demurrer, we will group together the salient facts thus admitted in order to determine whether they present a case for equitable relief. It is admitted by the demurrer that Rosanna Manley on the ninth day of October, 1880, executed a deed of trust on the property in dispute to M. A. Wolff, in trust to secure a note of $5,000 to plaintiff, James B. Hughes, payable three years after date with interest after maturity at the rate of ten per cent. per annum; that, by said deed of trust, said Rosanna Manley covenanted and agreed to pay the taxes on the land from time to time as they became due; to keep the improvements on the property insured, till the note should be paid, in the sum of not less than $5,000, and, if she did not do this, then said Hughes or his indorsees might insure the property and pay the taxes, and for repayment of the same hold the property as security; that, if the note was not paid when due, Wolff, as trustee, might sell the property at public sale at the eastern front door of the courthouse in the city of St. Louis, first giving twenty days' public notice of the time, terms and place of sale, by advertisement in some English newspaper published and printed in that city, and out of the proceeds of the sale pay, first, the expenses of the sale; and, next, to the payer thereof, upon the usual vouchers therefor, all moneys paid for insurance and taxes, and next the note secured by the deed of trust; that this deed of trust was duly recorded; that on the fourteenth day of October, 1880, said Rosanna Manley conveyed said property to defendant, Edward Ward, in trust for his wife, the defendant, Cathèrine Ward; that Ward and his wife agreed as a part of the consideration for this deed to pay all deeds of trust on the property, and that they are entitled to the premises subject to said deed of trust; that on the ninth day of October, 1883, defendants, Edward and Catherine

Ward, agreed in writing with James B. Hughes to pay the latter six promissory notes payable in six, twelve, eighteen, twenty-four, thirty and thirty-six months from that date, each for $175, which they gave him for the future interest on said note of $5,000 ; that Rosanna Manley and defendants failed to pay the taxes on the property for the years 1884, 1885 and 1886, and that defendants failed to pay the note of $175 falling due October 9, 1886, and that the interest on the note of $5,000 was not paid after the latter date ; that Wolff, as trustee, gave notice in the *Republican*, a newspaper published in St. Louis, that the property would be sold on Monday, May 22, 1887 ; that this notice was inserted in said paper the first, second and third days of May, 1887 ; that, discovering that May 22 fell on Sunday, the trustee changed the notice which was published May 4, so that the sale was set for Monday, May 23, 1887 ; that the notice as corrected was published for nineteen days only, instead of twenty ; that, believing the notice sufficient, plaintiff, George P. Wolff, bought the property at the sale, bidding therefor the sum of $4,250 ; that the trustee executed to said Geo. P. Wolff a deed for the property under the power contained in the said deed of trust, which was recorded, but the recitals in this deed did not show the change in the notice as stated ; that Geo. P. Wolff, believing he had title to the property, paid the taxes on it up to August 23, 1887, amounting to $673.26, and on August 3, 1887, he caused the improvements on the property to be insured for which he paid $45, and that he made necessary repairs, costing him $34.85 ; that, believing his title to the property to be good, he borrowed $5,000 of said James B. Hughes, and gave the latter a deed of trust on the property to secure the same, defendant, Marcus A. Wolff, being the trustee in this transaction also ; that defendants, Ward and wife have since the sale of the property to Geo. P. Wolff constantly asserted said sale to be void, and instituted suit against plaintiffs to set

same aside, but failed to prosecute same; that defendants, Ward and wife, have refused to surrender possession of the premises to Geo. P. Wolff, and have aided and assisted the occupants of the premises in resisting steps by said Geo. P. Wolff to obtain possession thereof, and have claimed and caused their tenants to claim that the sale to Geo. P. Wolff was void; that plaintiffs had offered to reconvey to defendants, Ward and wife, the said premises and to satisfy their deed of trust, and were then ready to do so, upon payment by them to plaintiffs of the debts secured by said Manley deed of trust and the expenditures made by said Geo. P. Wolff; that, though he once believed the said sale valid, the said Geo. P. Wolff was then advised and averred that it was void, by reason of the said mistake and defect in the notice of sale; that defendants, Ward and wife, were insolvent, but they were collecting and using the rents derived from the premises and have not paid the principal or interest of the indebtedness, and that the premises were not of sufficient value to pay such indebtedness unless the rents were collected and appropriated to its payment.

In this connection it is well enough to state that defendant Farish was trustee in a deed of trust subsequent to the Manley deed of trust, to secure to defendant, Mary Sweeney, the payment of a sum of money which the court found amounted at the time of the trial to $635.21.

Do these facts alleged by plaintiffs, and admitted by the demurrer, constitute a good cause of action in a court of equity? We think they do. It is conceded by appellants that the sale by the trustee, under the power given in the deed of trust in this case, whether valid or invalid, conveyed to Geo. P. Wolff the title of the *cestui que trust*. This is the unquestioned law. *Wilcoxon v. Osborn*, 77 Mo. 632, and cases cited; *Wells v. Lincoln Co.*, 80 Mo. 424.

. The points urged against the sufficiency of the petition as a basis for equitable cognizance are : *First.* That Geo. P. Wolff obtained a legal and valid title to the property by the sale in May, 1887, and hence his remedy for its recovery was ejectment. *Second.* That plaintiff, Geo. P. Wolff, having acquired the title of the *cestui que trust* to the property by the sale under the deed of trust, had a complete remedy at law for the foreclosure of the deed of trust, even admitting the invalidity of the sale. The first inquiry, then, is as to the effect of the sale by the trustee, May 23, 1887. Twenty days' notice was required by the terms of the deed of trust. The sale having been made under a naked power given in this instrument, the trustee must be held to a strict compliance with the terms and conditions prescribed.

The notice was published for the first time on the first day of May, 1887, and the day set for the sale was "Monday, May 22, 1887." The notice was inserted in the paper in this form the second and third days of May. Then the discovery was made that the twenty-second day of May fell on Sunday, and the notice was changed so as to read "Monday, May 23, 1887," as the day fixed for the sale. It is conceded that the notice thus corrected was not published twenty, but only nineteen, days before the day of sale. It is contended that the mistake in the notice as first published was clearly a clerical error and could not have operated to mislead anyone. If we could say positively that no one was misled by it, this position would be tenable. But we cannot take judicial notice, nor can we assume that no one was misled.

In *Dana v. Farington*, 4 Minn. 433, the notice was changed from the twenty-third to the twenty-fifth of May, and it was found by the jury that the mortgagor did not know of the change, though both notices were published in the same paper. The sale was held to be invalid.

It is utterly impossible for us to know what construction would be put by the public upon the publication of this notice, before and after the correction. Some might see the first publication and not the subsequent ones, as in the case of *Dana v. Farington, supra;* some might construe the notice valid, some invalid. As a matter of law, therefore, we cannot say that this notice, as published, did not injuriously affect the bidding. The notice is required to be given, and the publication of it should be absolutely free from doubt. The mode of the publication should be such that there could be no room for construction as to its legality. Capital is timid. It can find investment, as a rule, upon securities involving no questions of doubt, and, in public sales of this character, any variance from the method of procedure prescribed in the instrument conferring the power to sell, whether formal, clerical or substantial, where men of ordinary business capacity might very well differ as to the effect of such variance, ought not to be tolerated by the courts. The terms prescribed are definite and certain, and there is no excuse for varying from them. The best interests of all concerned require strict conformity to the prescribed terms of the power. The freer the title to landed property is, the greater the probability is that it will bring its full value at public auction.

We do not deem the cases of *Gray v. Shaw*, 14 Mo. 341; *Powers v. Kueckhoff*, 41 Mo. 425, and *Stephenson v. January*, 49 Mo. 465, cited by appellants, as authorities applicable to the facts of the case at bar.

In the second place it is argued that a trustee has power to adjourn a sale and that the change in the notice in this case operated as an adjournment of the sale from May 22 to May 23. It may be conceded that at common law the trustee had power to adjourn a sale, if he deemed it to the interests of all concerned to do so, but in that event the adjournment had to be made *at the time and place* appointed for the sale. *Jackson v.*

*Clark*, 7 Johns. 225 ; Jones on Mort., secs. 1873, 1874 ;
*Johnson v. Houston*, 47 Mo. 227 ; article by Judge
DILLON, 2 Am. L. Reg. ( N. S.) 721. The cases of
*Sayles v. Smith*, 12 Wend. 57, and *Bennett v. Brund-
age*, 8 Minn. 432, relied upon by appellants, in support
of the position assumed, were decided not upon the
common law but upon statutes in New York and Min-
nesota, authorizing postponements of sales under deeds
of trust, and *Westgate v. Handlin*, 7 How. Pr. 372, also
cited by appellants, was decided upon the authority
both of *Sayles v. Smith*, *supra*, and the statute, and
besides that it was held that there was sufficient notice
*after* the change.

On the other hand, however, the supreme court of
Illinois, in *Griffin v. M. Co.*, 52 Ill. 130, and *Thornton
v. Boyden*, 31 Ill. 200, has held that while a trustee may
adjourn a sale yet, in case he does, he is required to give
a new notice for the full time required by the terms of
the trust deed. We do not deem it necessary to decide,
whether the trustee would have power to appear at the
*time and place* set for the sale in the notice and by a
public announcement adjourn the sale to a future day
and make a valid sale at such future day without giving
any further notice than this public announcement, or
not, for that was not done in this case. It will be time
enough to dispose of that question when it arises. But
in the absence of any statute on this subject in Missouri
we hold that a trustee would have no power to adjourn
a sale, *before the day of sale*, by simply changing the
time at which the sale will take place. If the day of
sale is changed, the notice must be published for the
full time required by the terms of the trust deed, after
such change is made.

But it is again urged that, "even if the sales were
void, the plaintiffs in this case cannot question it by a
suit. That remains for Catherine Ward and her only."
A large part of the original brief and all of the brief in
reply of appellants is devoted to the discussion of this

position. Appellants' premises in the discussion of this question are false. They assume in this argument that the plaintiffs alone assert that the sale is void. This assumption is based on a misconception of the state of this record. The argument is that appellants are now estoppped by the technical admission by demurrer of the facts set up in a petition. In this they are correct ; *but so long as they stand on the demurrer, they are bound by this technical admission.* Mrs. Ward filed her demurrer and when it was overruled she refused to plead further and she is now before this court on that demurrer, and she is as much bound by the admission of the facts by that demurrer in this court as she was in the trial court. No one denies her right to have answered over and denied the facts, which her demurrer admitted simply for the purpose of the demurrer ; but this she did not see proper to do. If she had filed an answer and insisted that the sale in question was valid, then the argument and the authorities cited by counsel would be in point.

Let us see then what appellants have admitted by the demurrer, in regard to the validity of the sale. In one part of the petition, after averring the execution of the deed by said Manley to Edward Ward ᠂in the trust for his wife, it is alleged that "said Edward and Catherine Ward ever since the last-named deed have been and *now* are entitled to said premises subject to the deeds of trust herein mentioned and claim to be the owners of said premises." The petition also avers that the said sale was void by reason of the mistake and defect in the notice mentioned. It is also averred that appellants "have since the sale constantly asserted said sale to be void ;" that they "have refused to surrender possession of the premises to said George P. Wolff, and have aided and assisted the occupants of the premises in resisting steps by said George P. Wolff to obtain possession of said premises ; the defendants  *   *   *  claiming and

causing such tenants to claim that said sale to George
P. Wolff was void."

Appellants must, therefore, be taken and held in
the determination of this demurrer, as admitting : *First.*
That they claim to own the property subject to the deed
of trust. *Second.* That they claim that the sale to
George P. Wolff was void. Both parties have, there-
fore, agreed that the sale is void, one averring it in *haec
verba* and the other claiming it to be void. This
removes the major premise of the syllogism of appel-
lants' counsel, and his conclusion must of necessity go
with it.

A court of law is not competent to deal with the
subject-matter of this action. Many complications in
regard to the title to the property in dispute and the
interests of the several parties therein, which arose out
of the transactions at and since the sale in May, 1887, so
that no court, except one possessing the strong arm of
equitable jurisdiction, could in one action or several
grant full and adequate relief. There was Hughes hold-
ing a balance on the Manley deed of trust ; there was
George P. Wolff who had paid $4,250 of the Manley
deed of trust, and who had paid taxes and insurance
since the sale, and here were George P. Wolff and
Hughes and Marcus A. Wolff, all parties to the deed of
trust given since the sale. Where was the *legal* title to
this property under these conditions? The sale was
irregular but George P. Wolff obtained some interest in
the deed of trust and property covered by the deed
of trust. *Wilcoxon v. Osborn*, 77 Mo. 621 ; *Hon-
aker v. Shough*, 55 Mo. 472 ; *Jones v. Mack*, 53 Mo.
147 ; *Russell v. Whitely*, 59 Mo. 196. Under these cir-
cumstances, what title did he convey to Marcus A.
Wolff as trustee of Hughes? The titles and interests of
all the parties in and to the property were such, it seems,
that there was no way out of the embarrassments and
complications except through a court of equity.

III.  The third question propounded is :  Has each
of the plaintiffs an interest in the proceeding, and, if so,
were they all properly joined as plaintiffs in the peti-
tion ?  The plaintiffs are George P. Wolff, James B.
Hughes and Marcus A. Wolff.  There can be no question
about the interest of George P. Wolff in this contro-
versy.  He paid $4,250, in the first instance, for the pur-
chase of the property at a sale that he avers he thought
was a valid one.  In the second place he paid $600 or
$700 for taxes, insurance and repairs of the property
under the belief that his title was good.  He obtained
the interest of the mortgagee in the property by the
sale made by the trustee, at least to the extent of $4,250.
But we will say no more in regard to *his* interest.  This
is conceded by appellants.  We think James B. Hughes
also had an interest in the controversy.  Geo. P. Wolff
had borrowed $5,000 of him and had secured the payment
of that sum by a deed of trust on the property in con-
troversy.  Hence he was interested in the title, in
regard to that deed of trust.  His interest in the first
mortgage having been transferred by the sale in May,
1887, to Geo. P. Wolff, unless he could join with Wolff
in obtaining a sale of the property to pay his debt, he
would be cut off entirely if Wolff's title should be
defeated by a sale under a foreclosure of the Manley
deed of trust.

And we think Marcus A. Wolff a necessary party
to the case, either as plaintiff or defendant.  He, as
trustee, held the title to the property by virtue of the
Manley deed of ,trust as well as the Geo. P. Wolff deed
of trust, and in order that there might be no question
about the title under this foreclosure, it seems, that it
was very appropriate, indeed, that he should have been
joined in the action.

The interests of plaintiffs being different, were they
properly joined as plaintiffs in the bill ?  Mr. Jones in
his work on mortgages, section 1369, says :  " It is not
very material, however, in an equity suit, whether

more than one of the persons interested in prosecuting it, is nominally made a plaintiff. It is generally sufficient that the persons to be bound by the decree shall be brought before the court in some capacity. When a person having an interest in the security is made a defendant in the action, the bill ought to show his refusal to join as a plaintiff; but his omission is not material unless such defendant objects by demurrer. If several persons have rights and interests in the same demand and security even if they are not strictly joint and are entitled to the same relief they should naturally join as plaintiffs in seeking relief. But if one of the persons so interested institutes the suit and makes the others having like interests defendants, the requirements of equity are generally satisfied. If several persons have claims alike in being antagonistic to the defendant, but several and distinct in their nature, because they have arisen out of different events and circumstances, although they may join as coplaintiffs in seeking the same relief, in actual practice one person, perhaps, by reason of his greater interest or more urgent occasion for relief, institutes the suit without asking the co-operation of the others, making them defendants, * * * it is not material that the interests of the several plaintiffs should be coextensive or that they should have originated at the same time. Neither is the extent of the interest material if there be any interest at all; or whether it be absolute or conditional." ·

The plaintiffs, though their interests in the controversy were not joint, but diverse even, were properly joined as plaintiffs.

IV. It is insisted that appellants were not interested in the deed of trust given by Geo. P. Wolff to Hughes' trustee, and, as the petition prayed to have that canceled, there was a misjoinder of causes of action. If Hughes and his trustee had not joined with Geo. P. Wolff in asking this to be done, there might be some

force in the argument.  But the three parties to that deed of trust join in a petition asking the court to set it aside on the grounds set out therein.  This deed of trust was on property in which, as it is alleged, appellants had an interest.  The plaintiffs had to do equity before they could ask relief.  They prayed that this property might be sold to pay certain sums of money alleged to be due them and in order to obtain this relief against appellants they were required by every principle of fair dealing and equity to put the parties in *statu quo*, so that the title to the property, when sold, would be perfect beyond peradventure, and in order to be perfect it had to be freed from the complications in which it was involved by reason of the acts of the plaintiffs.  As to this deed of trust there was no issue to be tried.

V.  Another objection is urged that the name of Edward Ward was omitted from the caption of the amended petition and hence no judgment could be rendered against him.  There is no merit in this objection.  His name is often used in the body of the petition as a defendant, and it is evident from the whole record that the omission of his name from the caption of the petition was simply a clerical error.  He was made a party to the action in the first instance ; no order of dismissal as to him anywhere appears in this record and final judgment was rendered against him.  The rule is to look to the body of the petition to ascertain its purport and sufficiency, and this shows beyond controversy that he was retained as a defendant.  Bliss, Code Plead., sec. 156 ; *Fuggle v. Hobbs*, 42 Mo. 537 ; *Headlee v. Cloud*, 51 Mo. 301.

VI.  Counsel for appellants complain of the action of the court in appointing a receiver and turning Mrs. Ward out of her home without a trial.  Having found that this is a proceeding in equity, it follows, as we have said, that the circuit court had jurisdiction to appoint a receiver to take charge of the property, to

manage it and collect the rents, there being an allegation of the insolvency of Ward and his wife, and of the insufficiency of the property to pay the debt. No exceptions were saved to the action of the court in this regard, and hence we cannot review it. But the facts appear to be that Mrs. Ward bought this property, and assumed to pay this deed of trust given by said Manley to Hughes; that she paid no interest on the debt after April 9, 1886, and failed to pay the taxes since the year 1883, as well as to have the property insured. She occupied the premises for a year after the failure to pay the interest and nearly three years after failure to pay the taxes and insurance. Hence, in looking at the conduct of Mrs. Ward in the light of the surrounding circumstances, and the facts as admitted in the petition, she cannot claim any special consideration of a court of equity. We sympathize with her in her inability to pay her debts; but she having voluntarily assumed the relation to this transaction that she now occupies, this court is unable to afford her relief, especially upon the record as presented to us. Judgment affirmed. All of division number 2 concur.