HENRY FOGUS, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 17, 1892.

1. **Master and Servant:** NEGLIGENCE OF MASTER: KNOWLEDGE BY SERVANT OF THE DANGER OF HIS POSITION. When a servant, in the course of his work, assumes a position of danger in obedience to the order of his master, and sustains damages in consequence owing to the negligence of the master in failing to supply a sufficient force of workmen or sufficient appliances, his knowledge of the danger of the position assumed by him will not constitute contributory negligence and preclude his recovery of damages, unless the danger was so glaring that even a servant in a position of subordination and under a duty of obedience would, in the exercise of ordinary care, have refused to enter into it.

2. ———: ———: ———: LAW AND FACT. Whether such obedience on the part of the servant constitutes contributory negligence is ordinarily a question of fact for the jury, and such it was *held* to be in the case at bar.

3. ———: ———: ———: INSTRUCTIONS. The instructions in this cause are considered, and *held* to be in substantial conformity with the above rule, to be supported by evidence, and not to be misleading.

4. ———: ACTION FOR NEGLIGENCE OF THE MASTER IN THE PERFORMANCE. OF DANGEROUS WORK: RELEVANCY OF EVIDENCE. The action at bar being of the nature above indicated, and the issue being whether a vice-principal acting for the master had proceeded in the exercise of ordinary care and skill in the moving of heavy machinery, it was *held* that evidence was admissible to show that the work engaged in could have been performed by other and safer methods than the one adopted.

5. **Practice, Appellate**: EXCLUSION OF EVIDENCE: NON-PREJUDICIAL. ERROR. Error in improperly sustaining an objection to an interrogatory to a witness as leading is *held* not to have been prejudicial, since it did not appear what the interrogator proposed to prove, or that any evidence material to his side of the case had been excluded.

*Appeal from the Louisiana Court of Common Pleas.*
HON. E. M. HUGHES, Judge.

AFFIRMED (ROMBAUER, P. J., *dissenting*).

*W. H. Morrow*, for appellant.

Defendant's demurrer to the evidence should have been sustained. The evidence fails to disclose such facts—directly or inferentially—as entitle respondent to recover. A servant of mature years, especially if he be experienced in the work in which he is engaged, assumes all risks incident thereto. *Cummings v. Collins,* 61 Mo. 520; *Smith v. Railroad,* 69 Mo. 32; *Steffen v. Meyer,* 96 Mo. 420; *Railroad v. Barber,* 5 Ohio St. 78; Wood on Master & Servant, secs. 335, 375; *Goins. v. Railroad,* 37 Mo. App. 221, and authorities therein cited at p. 233; *Conroy v. Iron Works,* 62 Mo. 35; *Flynn v. Bridge Co.,* 42 Mo. App. 529; *Alcorn v. Railroad,* 108 Mo. 81, and citations. If the servant has actual knowledge of the peril of the work in which he is engaged, and of the danger to which he is exposed by engaging therein, he cannot hold the master liable for an injury foreseen by him as likely to occur therefrom. *Waldhier v. Railroad,* 87 Mo. 37; *Devlin v. Railroad,* 87 Mo. 545; *Dale v. Railroad,* 63

Mo. 459. If the defect in an implement be known to the employe, and he chooses to engage to work therewith, he takes upon himself the risk incident to such defect. *Porter v. Railroad*, 71 Mo. 66, and the authorities therein cited at p. 77; *Sullivan v. Railroad*, 17 S. W. Rep. 748; *Sullivan v. Bridge Co.*, 9 Bush, 81; *Brown v. Byroads*, 47 Ind. 435; *Patterson v. Railroad*, 76 Pa. St. 389.

*Fagg & Ball*, for respondent.

The matters of fact involved in this case were fairly presented to the jury by the instructions of the court. The real question involved in this appeal is the contributory negligence of plaintiff as charged in defendant's answer. As to the general obligations and duties of masters and servants, the law is so well settled in this state that no particular authorities need be cited. *Stephens v. Railroad*, 96 Mo. 207; *Stevens v. Mayer*, 96 Mo. 420, and cases cited. The attention of the court is called to the fact that appellant complains of the action of trial court in modifying two of the instructions asked by defendant, and they are classed as having been given by the court to appellant. In fact they were not given by the court upon its own motion, but were accepted by counsel for appellant as modified, and given to the jury as declarations of law, on the part of defendant. The purpose of the respondent is not to trouble the court with a lengthy and elaborate brief. The real point of objection made by the appellant in his brief is the failure of the court to give the instructions, asked by way of a demurrer to the evidence, and we have no disposition to argue other points alluded to. The following list of cases may be referred to as pertinent to the issue involved in this case. *Conroy v. Iron Works*, 62 Mo. 39; *Stoddard v. Railroad*, 65 Mo. 514; *Thorp v. Railroad*, 89 Mo. 650; *Devlin v.*

*Railroad*, 87 Mo. 545; *Bridges v. Railroad*, 6 Mo. App. 389; *Dale v. Railroad*, 63 Mo. 455; *Huhn v. Railroad*, 92 Mo. 440; *Stephens v. Railroad*, 96 Mo. 207; *Soeder v. Railroad*, 102 Mo. 673; Wood's Master & Servant, sec. 359.

THOMPSON, J.—This was an action by an employe against his employer to recover damages for personal injuries on the theory of negligence. The plaintiff had a verdict and judgment in $2,000, the sum demanded in his petition, and the defendant prosecutes this appeal.

The petition alleges that on March 24, 1890, and for a long time prior thereto, he was an employe of the defendant in what is known as the waterworks and pump-repairing department; that in connection with said department, and as a part thereof, the defendant was engaged in crushing rock; that plaintiff in the employment in which he was engaged was under the supervision and subject to the orders of one R. E. Tayman as foreman of pump repairs, who ordered him to the town of Pearl, in Illinois, to aid and assist in putting a new shaft and turntable in defendant's stone crusher located at that place; that, while there, he was ordered by Tayman to assist other employes of defendant to remove from one position to another, as a part of the work to be done, a large iron wheel weighing about six thousand pounds; that he, and three other employes, under the directions of Tayman, were required to make said removal by hand without the aid of any appliances or machinery whatever; that the moving of said wheel to the place designated by Tayman required a change from one floor to another having a difference in elevation of five or six inches; that the plaintiff, with one coemploye on one side and two coemployes on the other side, undertook under

Tayman's orders to roll said wheel by hand from one floor to the other; that in dropping from one floor to the other, and without any fault, negligence or want of care on the part of plaintiff, and by reason of the fault, negligence and want of care on the part of defendant in providing proper appliances and machinery and a sufficient number of hands to aid and assist in the said work of removal, the said wheel careened and fell over on the side on which plaintiff was, catching said plaintiff between it and the wall of the building in which it then was, and falling with its entire weight upon plaintiff's body, right leg and foot, so as to compel an amputation of a portion of the foot, to the great injury and damage of plaintiff,—wherefore plaintiff claims damages in the sum of $2,000.

The answer was a general denial, and a plea of contributory negligence, and there was a reply in the nature of a general denial of the new matter in the answer.

The evidence tended to show the following facts: The plaintiff, Henry Fogus, forty years of age, had been in the employ of the appellant about eleven years as assistant foreman of pump repairs under R. E. Tayman, general foreman of that department of the defendant's business, which included the management and supervision of its stone crushers, of which there were two—one at Pearl, Illinois, and the other at Blue Springs, Missouri.

The plaintiff had charge of this business west of the Mississippi river, which included the stone crusher at Blue Springs, but was subject to the orders of Tayman, and might be required by the latter to perform duty at any point to which he might be called. In March, 1890, by direction of Tayman, Fogus (whose headquarters were at Slater, Missouri) was called to Pearl, Illinois, to assist in repairing the stone crusher

at that point.    In making the repairs, it became neces-
sary to move the large iron wheel to which the main
belt was attached for the purpose of communicating
power to the stone crusher.    This wheel, designated as
the pulley or pulley belt wheel, was attached by bolts
to another wheel known as the fly wheel.    Taking
both these parts together, it may be described as
a combined pulley and fly wheel, having a common
center through which a shaft passes and upon which
it revolves.    Its weight, as testified to by different
witnesses, ranged by estimate from fourteen hun-
dred to two thousand pounds, but the only witness
who seems to have had actual knowledge of the
matter fixes the weight of the fly-wheel part at eight
hundred pounds, and the pulley-wheel part at six hun-
dred pounds, making a total weight of fourteen hun-
dred pounds.    The fly wheel is fifty-eight inches in
diameter, its rim being four or five inches in thickness,
with a surface width of four inches, and is connected
with the hub or common center by spokes; the pulley
wheel is forty inches in diameter, with a rim having a
surface width of fourteen and one-half inches.    The
room in which the wheel was located is about thirty by
twenty feet, and was occupied in part by the stone
crusher and the timbers used to support it, and the tim-
bers upon which the bearings for the shaft of the wheel
rested, leaving a space estimated as being from ten to
twelve feet wide by eighteen or twenty feet long; the
ceiling of the room was of plank and the height of the
ceiling above the floor between seven and eight feet.
The distance between the surface of the pulley-wheel
rim and the fly-wheel rim was nine inches; the surface
of the timbers upon which the shaft bearings were
placed was twelve inches square.

Prior to the participation of Fogus in the work to
be done, the wheel had been lifted from its usual posi-

tion and so placed, by turning it partly around, that the shaft could be taken out, and had been blocked in that position. The plaintiff's participation in the work commenced (while the wheel was thus situated) with the removal of its shaft. This having been done, the next thing was to move the wheel from the position it was then in to a distance of eight or ten feet, and lay it on the floor. It was while attempting to do this that Fogus sustained the injury of which he complains. The number of men employed in effecting the removal of the wheel was six, including Fogus. Tayman was superintending the work, and was also manually engaged in assisting to do it.

The method adopted for moving the wheel was to roll it by hand down an incline, one end of which rested on a block near that point of the floor where the wheel was to be placed, and the other end under the end of the pulley wheel. This incline was composed of two two-inch planks, twelve inches wide, the planks lapping at a distance of about the half-way point between the extreme ends. The entire length of the incline was about eight feet, with a declivity of about one inch to the foot. The position of the men, while rolling the wheel, no special place having been assigned to any, was as follows: Tayman was in front of the wheel and facing it, holding to the rim of the fly wheel, one foot on either side of the incline. Fogus was on the fly-wheel side towards the front, holding by the spokes and the rim. Two other men were on the same side with Fogus, one near the center, the other at the rear; and the other two men were on the pulley-wheel side—front and rear. According to the defendant's evidence, at the time the wheel was started the rim of the fly wheel was resting on one of the timbers used to support the bearings, and the rim of the pulley wheel at the end of the decline that had been placed under it.

and upon which it was intended to roll.   As the wheel
was rolled forward the rim of the fly wheel soon passed
off of the timber upon which it rested, and the entire
weight of the wheel was transferred to the rim of the
pulley wheel resting on the incline.   In about two or
three feet from that point, as the wheel was rolled on,
it passed over that part of the incline where the two
planks lapped, and immediately the men lost control of
it, and it fell, inflicting the injury of which the respond-
ent complains.

But the plaintiff's evidence was to the effect that
the entire weight of the wheel, before it was rolled
forward, rested on the rim of the fly wheel; that the
incline was so placed that, when the rim of the fly
wheel was rolled off of its support, there was a drop of
two or three inches of the entire wheel before the rim
of the pulley wheel came in contact with the incline
upon which it was to be rolled down, and that this was
the point at which the wheel careened and fell.   The
defendant, on the contrary, contends that the wheel
rested equally both upon the rim of the fly wheel and
the rim of the pulley wheel; that there was no drop of
the wheel at all when the rim of the fly wheel was
rolled off the timber upon which it rested; but that
about two feet further down the incline there was an
offset of two inches, caused by the lapping at that
point of the planks of which the incline was con-
structed; and that it was here, as the rim of the pulley
wheel passed over this offset, that the men lost control
of the wheel, and it fell.   There was evidence to sup-
port both of these hypotheses.

The plaintiff also claims that he spoke to Mr.
Tayman about its not being safe to handle the wheel
in the way he was handling it; and that he (plaintiff)
told him of other and better ways of handling it.   This

colloquium is set out further on. This claim of plaintiff is controverted by the evidence given on the part of the defendant.

Exclusive of the two matters just referred to, there is no substantial disagreement as to the facts of this case.

In addition to the official position that the plaintiff occupied in the service of the defendant and his long service in the line of his employment, it is conceded by him that he is a man of skill and experience in such work, and was aware that it was attended by more or less danger, and that it had to be done with much care and skill to avoid accidents.

There was no machinery or mechanical force used in effecting the wheel's removal, and the only mechanical device employed was the incline already described. Everything pertaining to the means and appliances used in its removal was patent, open to easy observation, and was fully known to the plaintiff.

So long as the wheel was kept on a balance it could not fall. The center of the wheel's gravity was a line passing through the points where the pulley wheel was bolted to the fly wheel. Two men could easily have held it in balance if it were resting on the rim of the pulley wheel on a level plane. In fact, in such a position it would nearly have balanced itself. The only danger attending its removal was the failure of the men to control the momentum and hold it in balance; a failure to do this necessarily resulted in its falling. But this failure grew out of the fact that the group of men on either side, in order to prevent it from careening on them, were continually pushing it against the others, so that the two groups were necessarily pushing against each other.

The method employed, and the means and appliances used, were the usual and customary ones hitherto

adopted for that purpose, and had been effectively used, without accident, upon several occasions (from eight to ten times) of the wheel's removal during the five or six years intervening between the establishment of the crusher and this accident to respondent, March 24, 1890. Tayman had never had but one accident in this kind of work before in forty years.

I.   The first assignment of error is that the court should have withdrawn the case from the jury. This assignment is not based on the proposition that there was no evidence of negligence on the part of the defendant, nor 'could it have been; for the plaintiff gave distinct evidence tending to show that the method of moving the wheel adopted by the defendant's foreman was dangerous and improper, and one of his witnesses went to far as to say that he would discharge a man who should undertake to do that work in that way. It is true that this evidence was rebutted by evidence adduced by the defendant, but it left a plain case for the jury on the question of the negligence of the defendant.

Then, as to the question as to the contributory negligence of the plaintiff, it does indeed appear that the plaintiff was an expert in the doing of work of this kind; that he was the defendant's pump repairer at Slater, Missouri, and was sub-foreman under the command of the defendant's foreman Tayman, who was in charge of the removing of the wheel at the time of the accident; that he (plaintiff) adopted a different method in doing such work where he was in command; that he and another of those assisting in removing this particular wheel suggested the danger of the method adopted by Tayman, but that Tayman overruled the suggestion. If, under these circumstances, the danger of the method adopted by Tayman was so glaring that even a servant in a position of subordination and

under a duty of obedience would, in the exercise of ordinary care, have refused to go on, then it must be conceded that the plaintiff is not entitled to recover. This is not a case where the liability, if any, of the defendant rests so strictly on its failure to furnish a sufficient number of hands or sufficient mechanical appliances to do the work safely, as it is a case where the plaintiff was ordered by his superior, the vice-principal of the defendant, into a place of danger, which place of danger was such by reason of the fact that a sufficient number of hands or sufficient mechanical appliances had not been provided by the defendant to do the particular work safely.

The legal principles governing the liability of the master to the servant, and governing the contributory negligence of the servant in such a state of facts, have been very clearly laid down by our supreme court in three cases, and are happily not subject to any question or dispute. The first of these cases is *Keegan v. Kavanaugh*, 62 Mo. 230, 233, where the court, speaking through Judge NAPTON, said: "It is undoubtedly the duty of a master, where his servant is engaged in hazardous employments, to see that every reasonable precaution on his part to insure safety is observed. The primary duty of the servant is obedience, and it is not to be expected that he will, upon mere imaginary danger of which he may be conscious, assert his right to relinquish his employment. He naturally looks to his employer for the observance of all reasonable and proper precaution, and his continuance in the service, when such precautions have not been observed, is rather to be attributed to confidence reposed in those to whose superior judgment he yields. If the risk is such as to be perfectly obvious to the sense of any man, whether servant or master, then the servant assumes the risk. But if it is a case where no such obvious

risks are incurred, and where it was fair to presume that the employe had been guilty of no negligence, the rule of law as well as of common sense and justice is, that the master is responsible for damages if any ensue."

This doctrine was distinctly reaffirmed in *Stephens v. Railroad*, 96 Mo. 207, 212. In that case Judge BLACK, giving the opinion of the court, said: "It is held in many cases where the servant knowingly incurs the risk of defective machinery, still, if not so defective as to threaten immediate injury, it is for the jury to determine whether there was negligence on his part." And further on he uses this language: "And more to the point, in this case, a recent text-book uses this language: 'If, therefore, the master orders the servant into a situation of danger, and he obeys, and is thereby injured, the law will not deny him a remedy against the master, on the ground of contributory negligence, unless the danger was so glaring, that no prudent man would have entered into it, even where like the servant he was not entirely free to choose.'" 2 Thompson on Negligence, 975. The learned judge then adds the following statement of doctrine: "There may be cases where the servant is ordered to do a particular act, and the order is so unreasonable, and the act so manifestly dangerous to life and limb, that the court, on the evidence, should declare the servant guilty of negligence in obeying the order of the master, and should direct a nonsuit. The general rule, however, is, that the question is one for the jury. It cannot be said that the servant and master are on an equal footing, even where they have equal knowledge of the danger. To so say is against common experience, and in disregard of the fact that the servant occupies a position subordinate to the master; the primary duty of the servant is obedience. It does not

follow, because the servant could justify a disobedience of the order, that he is guilty of negligence in obeying it.'' This doctrine was reaffirmed, and applied in *Shortel v. St. Joseph*, 104 Mo. 144,—a case which very closely resembles the case before us. In that case the engineer of the defendant directed the plaintiff, an employe of the defendant, to go under the arch of the sewer and remove the supports or centers, in doing which the arch fell upon the plaintiff and injured him. The same learned judge in giving the opinion of the court said: ''The proposition that the engineer was the agent and vice-principal of the defendant corporation is not controverted, and from the evidence and instructions it appears to have been conceded on the trial that it was unsafe and dangerous to remove the centers at the time they were removed, and that plaintiff attempted to remove the centers by the order and direction of the engineer. The real question, therefore, is as to what care, if any, the plaintiff should have exercised when thus acting under the order of the defendant; for the engineer represented the defendant. The master and servant do not stand upon an equal footing, *even when they have equal knowledge of the danger*. The position of the servant is one of subordination and obedience to the master, and he has the right to rely upon the knowledge and superior skill of the master. The servant is not entirely free to act upon his own suspicion of danger. If, therefore, the master orders the servant into a place of danger and the servant is injured, he is not guilty of contributory negligence, unless the danger was so glaring that a reasonably prudent person would not have entered into it. *Keegan v. Kavanaugh*, 62 Mo. 230; *Stephens v. Railroad*, 96 Mo. 209. But these cases show that, though the servant is ordered into a place of danger, still, if the danger is so obvious that a prudent person, though

acting in the capacity of a servant, would not obey the order, then he will be guilty of contributory negligence which will defeat a recovery."

The case before us is undoubtedly closer on its facts than either of the cases just cited, because the plaintiff was admittedly an expert in the doing of that kind of work, frequently did that kind of work at his place of employment in Missouri, and did it in a different way from that in which the defendant's foreman, Tayman, undertook to do it in the present instance. That he appreciated the danger of doing it as the defendant's foreman undertook to do it, is shown by the further fact that he objected to that method of doing it on the ground that it was dangerous, but was overruled by the defendant's foreman. But it must be kept in mind that he was in a subordinate position to that of Tayman, the defendant's foreman; that, as to Tayman, his position was that of a servant toward a master, in which his primary duty was obedience; that he had been called from his own place of work in Missouri to Tayman's place of work in Illinois to assist Tayman in the performance of this undertaking; that he knew that Tayman had often done this particular work before and in that particular place,—all of which would naturally incline him to yield his judgment to that of Tayman, and to submit to be overruled by the latter and to accept the danger, rather than to disobey the order of Tayman and incur the risk of losing his situation. We are, therefore, of opinion that the court committed no error in declining to nonsuit the plaintiff on the ground of contributory negligence.

II. The next assignment of error relates to a number of rulings of the court in admitting against the objection of the defendant, evidence tending to show that the wheel could have been moved by other and safer methods than that adopted by the defendant's

foreman.    In stating this assignment of error counsel for the appellant quote the following as a sample of this evidence: "In moving that wheel, if I had that wheel to take down, I would have used blocks and falls to have supported the wheel to keep it from dropping onto anybody, and then we could have gotten a rope on the bottom of it and lowered it down and slid it along."    It is not stated in the appellant's abstract or in his assignment of error that exceptions were properly saved to the admission of this species of evidence in the cases where it was admitted.    In one case as given in the appellant's abstract, a witness, who testified as an expert on the subject, and who was present when the accident happened and was engaged in moving the wheel with the others, was asked to state whether the mode adopted by the defendant's foreman was *according to the modern and more improved way of moving such objects*, and whether it was safe.    This question was objected to by the defendant, on the ground that the inquiry whether it was according to the modern and more improved way of moving such objects was irrelevant.    The witness then answered that he did not know that there was any modern or improved plan, but that in moving that wheel,—here the defendant interposed another objection which was overruled, and the defendant excepted.    The witness then gave the answer above quoted, stating the manner in which he would have moved the wheel.    We doubt whether the defendant has saved any exceptions to this species of evidence, such as requires us to express any opinion upon the propriety of admitting it.    But we prefer to give the defendant the benefit of this doubt, and to dispose of the question on its merits.    We are of opinion that there was no error in admitting this species of evidence.    The question was obviously one with which the jurors would not be presumed to be familiar.

They had before them a model of the wheel which was attempted to be moved, and of the contrivances by which it was attempted to move it. For the purpose of enlightening their judgment, on the question upon which they were called upon to decide, whether, in adopting the method which was adopted, the foreman of the defendant proceeded in the exercise of ordinary care and skill, it certainly seems proper to allow other witnesses, experienced in the doing of such work, to describe to the jury what other and safer methods, if any, might have been adopted in doing it. To determine the propriety of admitting this species of evidence, let us look at the other side of it, and suppose that all of it had been excluded from the consideration of the jury; upon what basis then could the jury have determined that any other method of moving the wheel, consistent with safety, was open to the defendant? We are clear that this evidence was relevant and proper, and, hence, we overrule this assignment of error.

III. The defendant in its direct examination of Mr. Tayman, its foreman, who had control of the work at the time when the plaintiff was injured, asked him this question: "Did you suggest a plan to Mr. Fogus [plaintiff], or Fogus to you, by which the wheel could be moved?" This question was ruled out as leading, on the objection of plaintiff, and the defendant excepted. Assuming that this question was improperly ruled out as leading, we nevertheless do not find in this ruling a ground of reversing the judgment; for the reason that, as the defendant made no distinct tender of evidence under the particular head, we cannot see what it was that it proposed to prove. If we could see that, in consequence of this ruling any evidence material to the defense had been kept out, we might hold it sufficient ground for reversing the judgment; but it appears, on an examination of the record, that

all the applicatory evidence of the circumstances surrounding the accident was fully gone into; and, hence, as no prejudice appears from this ruling, we must overrule this assignment of error.

IV.   The next assignment of error relates to the giving of plaintiff's instruction, numbered 2, which was as follows:   "2.   If the jury believe from the evidence in the cause that R. E. Tayman was, at the time stated in the petition, the agent and servant of the defendant, and foreman of the men engaged in doing the work therein described; and that as such foreman the said Tayman had authority and control of the work to be done; and that plaintiff was, at the time, subject to the orders and directions of the said foreman in doing the work in which he was thus engaged; and that the plaintiff, in obedience to the orders and directions of said Tayman, assisted in the removal of the balance wheel described in the testimony; and that whilst so engaged was hurt, injured and crippled, as alleged in his petition, by reason of the neglect and failure upon the part of defendant to furnish a sufficient number of competent men and reasonably safe and sufficient machinery and appliances with which to do the work in which they were then engaged; and that the plaintiff was, at the time, in his proper place, and was not guilty of any negligence or carelessness on his part contributing thereto; and that plaintiff was exercising ordinary care and prudence at the time he was injured, then the jury will find for the plaintiff, and assess his damages at such sum as the evidence in the cause shows him to be entitled to, not exceeding the sum of $2,000."

The first objection to this instruction is that it submits to the jury the question of the competency of the coemployes of the plaintiff, which question was not in issue under the pleadings.   We do not so understand

the meaning of the instruction, and we do not think that the jury would derive any such meaning from it. The petition alleges, among other things, that the accident happened by reason of the failure of the defendant to provide "a sufficient number of hands to aid and assist in the said work of removal." The instruction, instead of using the expression, "a sufficient number of hands," uses the expression, "a sufficient number of competent men." We regard the two expressions, in the connection in which they are used, as having the same meaning. A sufficient number of hands to assist in moving a heavy object would, by natural and legal implication, mean a sufficient number of competent men,—not school children or professional men, but men competent to perform heavy manual labor. We do not regard the language of the instruction as submitting to the jury the question, whether the six men that were furnished to perform the particular work were or were not competent men. All the evidence tended to show that they were competent men, and that there was no evidence to the contrary, and, if the instruction had submitted such a question to the jury, it would have undoubtedly been error; but it seems plain to us that the jury would not draw such a meaning from it.

The next objection to this instruction seems to us still more refined. It is that the instruction virtually tells the jury that the failure of the appellant to furnish reasonably safe "machinery" was negligence, if the respondent was injured because of appellant's failure to furnish such machinery; and it is argued that this was wrong because the defendant furnished no machinery at all. The petition charges that the defendant furnished no machinery at all for the moving of the wheel, and it predicates negligence on the fact that it failed to furnish "proper appliances and machinery,"

as well as a sufficient number of hands. We confess ourselves unable to gather any objection to this instruction grounded upon the confession of the very hypothesis upon which the action and the instruction proceeded,—a total failure of the defendant to furnish any machinery at all for the doing of the work, when machinery was required for the safe doing of it.

A third criticism upon the instruction is that it is wholly inconsistent with the instruction given for the appellant on the same issue. We think it a sufficient answer to this objection to say that we regard it as a good instruction; from which it follows that if the court gave, in behalf of the defendant, an inconsistent instruction on the same issue, that was an error in favor of the defendant which the defendant cannot make a ground of reversing the judgment.

V. The next assignment of error relates to the giving of the following instruction: "3. Although the jury may believe from the evidence in the cause that the work of removing the wheel described by the witnesses was unsafe and dangerous in the manner in which it was done, and that plaintiff was apprised of this fact, yet if you shall further find from the evidence in the cause that the danger and hazard of the undertaking was not of such an imminent and threatening character as to prevent a reasonably prudent person from undertaking the same, then the plaintiff did not assume to do the said work at his own peril, and was only required to exercise ordinary care and prudence incident to the situation and the character of the work required."

The objection to this instruction is that all the evidence showed, and there is no reasonable inference to the contrary, that no risk or element of danger, connected with the moving of the wheel, was unnoticed or unknown to the plaintiff. Admitting this to be true, it

Fogus v. The C. & A. Ry. Co.

does not at all follow from the decisions of the supreme court already quoted, that he necessarily assumed the risk, or that the court committed error in submitting to the jury the question whether, in consenting to assist in the work in the manner in which it was done, he was guilty of a want of ordinary care and prudence.

VI. The next assignment of error relates to the giving of the following instruction at the request of the plaintiff: "5. The jury is instructed that, although the plaintiff might have believed that the appliances furnished by defendant for removing the wheel were not as suitable and safe as they ought to have been, nevertheless, to constitute the act of plaintiff, in assisting to remove the said wheel, contributory negligence on his part, it must further appear to the satisfaction of the jury that the defective and dangerous character of the said appliances and machinery were so glaring that a man of ordinary prudence would not use them, and the jury should so find."

This instruction is in substantial conformity with the doctrine laid down in the decisions of the supreme court already cited, and in the leading case of *Conroy v. Iron Works*, 60 Mo. 35, and many other cases following the doctrine of that case. The criticism to which it is subjected is not intelligible to us.

VII. The next assignment of error consists of an objection to the instruction, numbered 6, given at the request of the plaintiff, as follows: "6. The jury is instructed that the primary duty of a servant to his master is obedience, and that, although they may believe that plaintiff may have been apprised of the dangerous and insufficient character of the machinery and appliances furnished by defendant to do the work in which he was engaged, yet, if it shall further appear to their satisfaction from the evidence that, after discovering said fact, he was assured that it was reason-

ably safe and sufficient for the purposes for which the same were furnished by his superior, then plaintiff will not be presumed to have assumed the risk and hazard of the undertaking in which he was engaged, and the jury should find accordingly; provided the said machinery and appliances for the removal of said wheel were not so plainly and obviously dangerous as to have prevented a man of ordinary prudence from participating in the work of removing said wheel."

This instruction is likewise drawn in conformity with the doctrine of the cases already referred to. But it is objected that it contains a hypothesis of which there was no evidence, and that the court should have ruled, as a matter of law, that the colloquy between the plaintiff and Tayman, the foreman and vice-principal of the defendant, did not amount to an assurance of safety. This would have been charging upon a question of fact, and would for that reason have been error; and it would have been error for the further reason that such a conclusion of fact was not warranted upon the evidence of that colloquy. As to that colloquy the plaintiff testified: "I spoke to Mr. Tayman about it [the wheel] in the way he was handling it, and I told them that the best way to handle it was to get a block and rope and set it onto the floor, and slide it down off of this incline. He [Tayman] said it wasn't any need. I said then we have better put an incline under the rim of the main balance wheel. He said it wasn't no use. Mr. Bartholic said the same thing—that it wasn't safe to do it that way. He [meaning Tayman] said it had been done that way before, and I supposed he knew what he was doing." We have given the above quotation as furnished in the appellant's abstract, but we find, upon referring to the record, that it is not correctly given. The statement in the record is as follows: "I spoke to Mr. Tayman *about it not being safe to handle*

*it the way he was handling it*, and I told them that the best way to handle it was to get a block and rope, and let it on the floor, and slide it down off this incline. He said it wasn't any need. I then said we had better put an incline under the rim of the main balance wheel. He said it wasn't no use. Mr. Bartholic said the same thing, that it wasn't safe to do it that way. He [meaning Tayman] said it had been done that way before, and I supposed he knew what he was doing. *I had never handled it before.*" The plaintiff then proceeded to describe how he would have done it. It is useless to argue to us that this language does not import a distinct objection, made by the plaintiff to the defendant's foreman, that the method adopted by the foreman was a dangerous method.

The next objection to this instruction has been answered several times in this opinion. The objection is that, if the colloquium above given could be construed as an assurance of safety, it was of no avail for that purpose, since it was in reference to a state of facts of which the respondent had full knowledge. We shall not go over the ground again for the purpose of answering this argument.

Equally untenable is the objection to this instruction that it was erroneous in submitting to the jury the question, who the plaintiff's superior was. It cannot be assumed that the jury would drift into the mistake that the superior, intended by this instruction, referred to anyone else than Mr. Tayman who was described in the petition as the foreman of the defendant, and under whose orders the plaintiff was at the time when he assisted in doing the work. They might, it is argued, have drifted into the supposition that his superior was one Martin, another superior servant of the defendant, namely, its division superintendent and superintendent of bridges and buildings. We do not gather from the

record what the scope of Martin's authority was, or whether he was a superior servant to Tayman or not. Nor was there any evidence that he was a superior servant to the plaintiff. The fact that he states, at the beginning of his testimony, the position which he occupied in the defendant's service, and also states that he had moved the wheel several times before, creates a *possibility* that the jury may have applied to him the word "superior" used in the instruction. If he was in fact the superior servant of the plaintiff, no prejudice resulted; if he was not, there is a *possibility* of prejudice. But, as there was no evidence that he was, we cannot assume that the jurors would make the mistake of supposing him to be the superior servant intended. We add that the defendant could have guarded against the possibility of such a mistake by asking an appropriate cautionary instruction; and, on the whole, we see in the use of this word in the instruction no sufficient ground for reversing the judgment.

VIII.  The next assignment of error complains of the giving of the following instructions by the court of its own motion:  "In accepting employment in the service of defendant for the performance of the work stated in his petition, plaintiff assumed all of the ordinary dangers and hazards pertaining to such work; and should the jury find from the evidence that the injury sustained by plaintiff was the result of an accident, unmixed with any negligence of defendant, as explained in other instructions, liable to occur in the performance of the work plaintiff was engaged in at the time of said accident, and was a risk incident thereto,—that is, a risk known or patent to plaintiff as pertaining to the work itself,—then the plaintiff cannot recover, and the jury should find for defendant."

"If the jury find from the evidence that plaintiff was aware of the risks and of the dangers attending

the removal of the wheel by the means and methods then being used for that purpose, then the verdict should be for defendant, although the jury should further find from the evidence that plaintiff pointed out to R. E. Tayman, as the representative of defendant, the dangers of attempting to move the wheel in that way, and suggested to him other and safer methods of doing said work, provided the risks and dangers of injury attending such removal were so plain and probable as to have prevented a man of ordinary prudence from engaging in the said work of removal."

We do not see how any refinement can extract a ground of complaint, or even of criticism, from these instructions. They are drawn in substantial conformity with the applicatory principles of law, founded in decisions of the supreme court which we have already stated.

In addition to these, the court gave nine instructions at the request of the defendant. They were all drawn in terms very favorable to the defendant. The last was modified by the insertion of the language in parentheses, as follows: "If the jury believe from the evidence that the danger of an accident, by reason of the removal of the wheel in question in the manner plaintiff's testimony represents it to have been moved, and the jury believes from the evidence it was moved in that way (was highly probable and reasonably certain), and that a danger so imminent was known to plaintiff, and plaintiff nevertheless undertook to remove said wheel in that manner, then it must be presumed that plaintiff assumed the risk of removing said wheel, and the verdict must be for defendant."

We see no substantial error in this modification. Under the principles already stated, we are of opinion that the court could not instruct the jury that they

*must presume* that the plaintiff assumed the risk upon any lower hypothesis than that the danger was highly probable and reasonably certain.     We understand that the instruction, without modification, would have read: " If the jury believe from the evidence that the danger of an accident, by reason of the removal of the wheel in question in the manner plaintiff's testimony represents it to have been moved, and the jury believes from the evidence that it was moved in that way, and that a danger so imminent was known to the plaintiff, and plaintiff nevertheless undertook to remove said wheel in that manner, then it must be presumed that the plaintiff assumed the risk of removing said wheel, and the verdict must be for the defendant." This was not only an argumentative instruction in assuming that the danger which was known to the plaintiff was " imminent," but it was tantamount to a peremptory instruction to find for the defendant; because the plaintiff's own evidence shows that he was aware that it was dangerous to move the wheel in the manner it was proposed to move it.     Tho modification seems to have been well drawn for the purpose of bringing the instruction to the plane of the decisions in this state, and notably to that of *Conroy v. Iron Works*, 62 Mo. at page 39, where the court says: " Where the defect is so glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, then, if the servant will engage in the hazardous undertaking, he must be considered as doing it at his peril." There can be no sensible distinction between a defect which is "so glaring that with the utmost care and skill the danger is still imminent," and a danger that is "highly probable and reasonably certain;" and we, therefore, see no error in this modification of the defendant's instruction.

Notwithstanding the large number of instructions given, both for the plaintiff and the defendant, and by the court of its own motion, the defendant wanted still more, and complains that the court committed error in refusing three others which were tendered on its behalf. We shall not examine these instructions for the purpose of seeing whether they might have been properly given. The jury was very fully instructed, both on the theory of the plaintiff and upon that of the defendant. In fact the jury were over-instructed. There were but two issues, that of the negligence of the plaintiff and the negligence of the defendant, and the principles applicable to these issues could have been stated in four paragraphs at most. The jury could have been instructed in four paragraphs, two of them relating to each of these elements, and one drawn on the plaintiff's and the other on the defendant's hypothesis.

We have thus endeavored to go patiently over a long catalogue of objections, and we find no error in the record, and order that the judgment be affirmed. Judge BIGGS concurs. Judge ROMBAUER dissents.